El Pueblo de Puerto Rico, demandante y apelado, *v.* Juan Alvarado, acusado y apelante.

No. 5699.—*Sometido:* Noviembre 15, 1935.—*Resuelto:* Enero 21, 1936.

*Leopoldo Tormes García,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Presidente Señor Del Toro, emitió la opinión del tribunal.

El Fiscal del Distrito de Guayama formuló acusación contra Juan Alvarado imputándole la comisión de un delito

de atentado a la vida consistente en haber acometido con malicia premeditada y propósito de matarlo, el 2 de noviembre de 1932, en Salinas, a Juan Raspaldo, haciéndole a corta distancia cinco disparos de revólver sin lograr herirlo, matando el caballo que montaba y perforando la visera del capacete que llevaba puesto.

Alegó el acusado que era inocente y solicitó juicio por jurado. El 29 de octubre, 1934, se celebró la vista. Declararon varios testigos presentados unos por el fiscal y otros por la defensa. Puede formarse una idea correcta de lo que tendieron a demostrar la prueba de cargo y la de descargo, transcribiendo la narración del suceso como la hicieron Juan Raspaldo, el acometido, y Zoilo Ortiz, testigo del acusado.

Dijo Raspaldo:

"Yo recibí órdenes superiores de no permitir dentro de la finca hacer política activa de ningún partido, anterior al caso yo le llamé la atención a él (el acusado) porque conocí que se dedicaba a hacer política, entonces el día a que se refiere la demanda, yo le llamé nuevamente la atención, que me hiciera el favor de decirme de qué manera podía él comprender que no podía hacer política activa dentro de los terrenos de la Compañía y me contestó que ya yo le molestaba, que donde quiera que lo encontraba lo echaba, que si yo quería saber lo que era, que me bajara del caballo y yo le dije que no era cuestión de pelea que era una cuestión administrativa y entonces él caminó hacia delante y vira atrás y me hace cinco disparos, entonces los disparos matan el caballo y cuando yo ya salí del asunto y pude bajarme del caballo, le hice dos disparos, pero no fueron efectivos."

Y manifestó Ortiz:

". . . en la Colonia Teresa . . . entró el señor de Juan Alvarado vendiendo pescado . . . yo le compré dos libras. . . . Y se dirigió para abajo y se puso a conversar con dos señores y entonces intervino el mayordomo a caballo. . . . Don Juan Raspaldo y entonces pues le dijo que desocupara el sitio, que él no lo quería ver ahí, tanto que quiso tirarle el caballo encima y entonces con la misma haló por la pistola y le hizo así, la montó . . . y entonces le hizo así

y disparó y entonces al disparar fué que Juan Alvarado haló por la pistola también y se pegaron tiro a tiro los dos.''

Terminada la práctica de la evidencia, el juez dió amplias instrucciones al jurado. Después de explicarles en qué consistía el delito de atentado a la vida, les dijo:

''Ustedes tienen que hacerse . . . la siguiente pregunta: ¿Si este perjudicado que responde al nombre de Juan Raspaldo hubiera muerto y se hubiera presentado prueba aquí ante la Corte, con la prueba que aquí se ha presentado, y ustedes tuvieran que rendir un veredicto, ustedes tendrían elementos suficientes para rendir un veredicto de Asesinato en Primero o Segundo Grado? Si la respuesta es afirmativa, entonces tienen ustedes elementos para poder dictar un veredicto de Atentado contra la Vida.''

Seguidamente les manifestó:

''Dentro de una acusación por Atentado contra la Vida, cabe también un delito de Ataque para cometer Homicidio.''

Y explicados los elementos de ese delito, les indicó qué:

''También cae dentro de una acusación por Atentado contra la Vida un veredicto de Acometimiento y Agresión con Circunstancias Agravantes o de Acometimiento y Agresión de carácter Simple.''

Detalladamente les informó entonces sobre el delito de acometimiento con expresión de las circunstancias que lo convertían en grave, siendo una de ellas, la octava, cuando se cometiere con un arma mortífera en circunstancias que no revistieren la intención de matar o mutilar.

Luego les habló de la legítima defensa, terminando como sigue:

''Con estas instrucciones dejo el caso sometido a vuestra consideración, designando Presidente del Jurado al Señor Matías Pomales, a quien hago entrega en este acto de la acusación, de un capacete presentado como prueba por el Fiscal y aceptado por la defensa y de un modelo de veredicto que, como ya dije, puede ser de las siguientes clases: Culpable de Atentado contra la Vida o culpable de Ataque para cometer Homicidio o culpable de Acometimiento, fíjense, de Acometimiento, no de Acometimiento y Agresión, sino de Acometimiento de carácter grave, si entienden probadas las agra-

vantes o de carácter simple o no culpable, bien porque entiendan. probada los señores del Jurado la legítima defensa o bien porque tengan una duda razonable con respecto a la culpabilidad del acusado."

Se retiró el Jurado a deliberar y volvió a la sala de la. corte con un veredicto declarando al acusado culpable de acometimiento.

Y dijo el fiscal: "Sr. Juez, el Fiscal entiende que es un. veredicto irregular éste, se probaron las circunstancias agravantes." Habló algo el juez. Manifestó el presidente del. jurado que no tendría inconveniente en explicar por qué había el jurado llegado a la conclusión de que el acusado era culpable de acometimiento simple. Expresó el juez que no deseaba la explicación, y dirigiéndose al Fiscal le preguntó: "A ver, ¿qué es lo que quiere el Fiscal?" y éste contestó: "Nada absolutamente, renuncia a toda alegación en este caso." Finalmente el juez por su propio acuerdo ordenó al jurado que se retirara a deliberar sobre el punto de si el acometimiento se llevó a cabo con arma mortífera.

Se retiró en efecto el jurado y volvió otra vez a la sala de la corte con el mismo veredicto, esto es, declarando al acusado culpable de acometimiento simple. Y el juez dijo: "Pero éste es el mismo veredicto", y el jurado por su presidente contestó: "Ese es el que queremos los Señores del Jurado." Manifestó el juez que no había dado instrucciones sobre acometimiento simple. Indicó el presidente del jurado que le parecía que sí. Leyó el taquígrafo las instrucciones. Se declaró la corte en receso por cinco minutos. Al reanudarse la sesión el fiscal pidió a la corte que anulara el veredicto por ser contrario a la prueba y la corte decidió lo que sigue:

"En el caso de *El Pueblo de Puerto Rico* v. *Otero,* Decisiones de Puerto Rico, volumen 4, p. 104, se sostiene lo siguiente: En los casos en que el veredicto del jurado no esté formulado con arreglo a derecho y se ordene por la Corte que se formule un nuevo veredicto, el primer veredicto es nulo. Además, no comete error el Juez que desestimando un veredicto por no estar formulado con arreglo a derecho, ordena al Jurado la presentación de un nuevo veredicto

que declare al acusado culpable o no culpable del delito imputá-
dole. La Corte en este caso entiende que el veredicto no se ajusta
a las instrucciones dadas por la Corte ni a la prueba practicada en
este caso y ordena que el jurado vuelva a deliberar sobre este caso
y que rinda un nuevo veredicto a la Corte, cualquiera que sea ese
veredicto.''

Se retiró por tercera vez a deliberar el jurado y volvió a
la sala de la corte con un veredicto de acometimiento con cir-
cunstancias agravantes. Lo aceptó la corte y acto seguido
declaró al acusado convicto de un delito de acometimiento con
circunstancias agravantes y señaló día para dictar su sen-
tencia.

En el día señalado presentó el acusado una moción pidiendo
a la corte que dejara sin efecto el veredicto y concediera un
nuevo juicio. Se opuso el fiscal y la corte denegó ''la moción
de nuevo juicio.'' Y entonces muestran los autos que ocurrió
lo que sigue:

''DEFENSOR: Sr. Juez, yo quisiera que hiciera otro pronuncia-
miento.

''HON. JUEZ: ¿Cómo?

''DEFENSOR: ¿La Corte se niega también a aceptar el veredicto
de acometimiento simple?

''HON. JUEZ: Si, la Corte se niega a aceptar el veredicto de aco-
metimiento simple por haber sido declarado informal por la Corte
anteriormente y haber ya aceptado el último veredicto que rindió el
Jurado o sea el de acometimiento con circunstancias agravantes.

''DEFENSOR: Entonces, en cuanto a la negativa de la Corte a
aceptar el veredicto de acometimiento simple, tomamos excepción,
en cuanto a lo otro Sr. Juez, el acusado está en disposición de recibir
la sentencia que V. H. tenga a bien dictar.''

La corte dictó su sentencia condenando al acusado a seis
meses de cárcel y el acusado interpuso el presente recurso de
apelación. Señala en su alegato la comisión de cinco errores
que giran todos alrededor de la actuación de la corte en rela-
ción con los veredictos del jurado. Termina pidiendo

''La modificación de la sentencia apelada de acuerdo con lo es-
tatuído en el Art. 364 del Código de Enjuiciamiento Criminal, y

debiéndose anular el tercer veredicto por el cual se declaró al acusado culpable de Acometimiento Grave, y dictarse por este Hon. Tribunal la sentencia que corresponda a base del segundo veredicto rendido por el jurado, que declaró al acusado culpable del delito de Acometimiento Simple.''

El Fiscal del Tribunal Supremo estudia en su alegato las cuestiones envueltas en el recurso y termina diciendo y proponiendo lo que sigue:

''En nuestro criterio el jurado expresó claramente su opinión en lo que atañe a la culpabilidad del acusado, pero su veredicto, por error, no responde ni a las alegaciones ni a los hechos probados, y aunque el jurado en este caso siguió las instrucciones de la Corte, siendo la intrucción sobre acometimiento simple errónea, no estaba obligado a considerarla, (27 R.C.L. sec. 29, 858), pero habiéndola considerado indebidamente, la corte pudo, ajustándose a lo estatuído en el artículo 288 del vigente Código de Enjuiciamiento Criminal, instruir de nuevo al jurado y ordenarle la reconsideración del veredicto, por una sola vez. La corte inferior aplicó dicho artículo estatutario pero erróneamente, por lo que el tercer veredicto, aun cuando el acusado en el momento oportuno no levantó cuestión alguna sobre su recepción por la corte, constituyendo como constituye un error fundamental del procedimiento a seguir, no puede sostenerse; tampoco puede ni debe sostenerse el primer verdicto por ser contrario a la ley y haberse rechazado, como se rechazó, el segundo por la corte inferior, y por lo tanto, salvo el mejor criterio de esta Superioridad, lo procedente es ordenar la celebración de un nuevo juicio.''

Apelante y apelado están conformes, pues, en que la actuación de la corte de distrito fué errónea, pero no lo están en la sentencia que debe dictar esta Corte Suprema resolviendo el recurso. Pide el apelante la modificación de la sentencia recurrida y el apelado su revocación. La modificación que solicita el apelante consiste en que en vez de declarársele culpable de acometimiento con circunstancias agravantes, se le declare culpable de acometimiento, lo que implica que en vez de podérsele imponer la pena de seis meses de cárcel que le impuso la corte sentenciadora, podrá a lo sumo condenársele a pagar una multa de cincuenta dólares, sufriendo un día

de cárcel por cada dólar que deje de satisfacer. La revocación que propone el fiscal, lo es para dar paso a la celebración de un nuevo juicio en el que pueda dictarse la sentencia que proceda de acuerdo con los hechos y la ley.

Analizada la evidencia, encuéntrase en verdad que toda ella, tanto la del fiscal como la del acusado, demuestra que éste usó un arma mortífera para acometer a Raspaldo, bien lo hiciera con intención de asesinarlo o de darle muerte o de causarle daño, ya actuara en legítima defensa de su persona, y que por tanto los veredictos que procedían eran los de culpable de atentado a la vida, culpable de ataque para cometer homicidio, culpable de acometimiento con circunstancias agravantes, no culpable, siendo lo más correcto que la corte se hubiera ceñido a ellos en sus instrucciones al jurado.

Pero es lo cierto que la corte fué más lejos y dijo al jurado que podía también declarar culpable de acometimiento al acusado y que el Jurado rindió su veredicto en armonía con las instrucciones que se le dieron declarando al acusado culpable de acometimiento.

No se trataba de un veredicto que pudiera calificarse de informal o defectuoso, en cuyo caso la situación sería distinta, sino de un veredicto general, formal.

Si la corte lo consideró equivocado de acuerdo con la ley, pudo explicar al jurado las razones que tenía para sustentar tal opinión, comenzando por rectificar sus propias instrucciones. No lo hizo. Se limitó a ordenar al jurado que se retirara a deliberar sobre el punto de si el acometimiento se llevó a cabo con arma mortífera.

Volvió el jurado con el mismo veredicto y de modo terminante dijo a la corte por medio de su presidente que ese era el veredicto que querían los señores del jurado, veredicto que seguía siendo general, formal, y estando en armonía con las instrucciones recibidas, instrucciones que no fueron excepcionadas por ninguna de las partes, y a las cuales ha terminado el acusado por acogerse expresamente por estimarlas sin duda favorables.

De acuerdo con la ley ninguna otra cosa podía hacer la corte entonces que recibir el veredicto, haciéndolo constar en autos como el veredicto rendido por el jurado en la causa.

Dice el artículo 288 del Código de Enjuiciamiento Criminal:

"Artículo 288. Cuando ocurriere un veredicto de culpabilidad y el tribunal fuere de opinión que se ha equivocado el jurado en la aplicación de la ley, podrá explicar al jurado sus razones para sustentar dicha opinión, u ordenarle que vuelva a considerar el veredicto; y si después de esto diere el mismo veredicto, deberá hacerse constar en autos; pero en el caso de que el veredicto fuere absolutorio, no podrá el tribunal requerir al jurado para que lo vuelva a considerar.

"Si el jurado pronunciare un veredicto que no fuere ni general ni especial, podrá el tribunal ordenarle que lo considere nuevamente, y no se tomará razón de él, mientras no estuviere formulado en términos claros y precisos."

"Y si después de esto diere el mismo veredicto, deberá hacerse constar en autos." *"It must be entered"*, expresa el original inglés. Disposición terminante que no admite otra interpretación en un caso como éste que la de que el veredicto, quedando por supuesto sujeto a los ulteriores procedimientos que pudiera autorizar la ley, debió registrarse como final, no estando la corte autorizada para ordenar la tercera deliberación que dió por resultado el veredicto de acometimiento con circunstancias agravantes que ambas partes están conformes en que no puede subsistir.

Y a esa conclusión se llega con más fuerza todavía cuando se considera que no es del todo claro que la instrucción de acometimiento que la corte diera fuera errónea. No estaba la corte obligada a darla de acuerdo con el resultado de la evidencia, pero pudo darla quizás porque el delito de acometimiento está necesariamente comprendido en el de atentado a la vida que se imputó al acusado. Artículo 286 del Código de Enjuiciamiento Criminal.

En uno de los casos más antiguos de California, reportado en el volumen seis de sus Decisiones, en el de *The*

*People* v. *Vanard,* 6 Cal. 562, la Corte Suprema del estado dijo y resolvió lo que sigue:

"La otra objeción suscitada es la irregularidad del veredicto. La apelante fué acusada de 'acometimiento con intención de cometer asesinato.' El jurado la halló culpable de 'acometimiento con intención de cometer daño corporal.'

"En el caso de *El Pueblo* v. *Nugent,* 4 Cal. 341, resolvimos que una acusación por acometimiento con arma mortífera con la intención de cometer grave daño corporal, no tiene necesariamente que contener la alegación de que el mismo fué 'cometido sin considerable provocación'; que aunque tal lenguaje califica la naturaleza del delito, empero no entra en la médula del cargo; que las palabras son una calificación negativa del delito, que no necesita ser declarada, sino que debe servir de argumento a la defensa durante el juicio.

"En el presente caso es aparente que el veredicto no declara al acusado culpable del delito imputado en la acusación, a saber: 'acometimiento con intención de cometer asesinato.' Permítasenos, entonces, investigar si hay algún delito menor comprendido en esta imputación, del cual el acusado ha sido declarado culpable por el veredicto. El delito inferior en grado es 'acometimiento con arma, instrumento, u otro objeto mortífero, con intención de infligir daño corporal en la persona de un semejante, sin que aparezcan provocaciones considerables, o sin que las circunstancias del acometimiento demuestren un corazón pervertido y maligno.' Ahora bien, aunque no es necesario alegar en la acusación la provocación y las circunstancias, y por consiguiente tampoco hay que hacerlas constar en el veredicto, sin embargo, es aparente que el arma o instrumento con que se perpetró el acometimiento deben ser alegados y probados, al igual que el hecho de que el acometimiento fué inferido con arma mortífera, etc., ella va a la substancia del delito y lo distingue de un acometimiento corriente.

"En el caso de *El Pueblo* v. *Davidson,* 5 Cal. 133, en que se basa el Procurador General, el veredicto halló al acusado 'culpable de acometimiento con arma mortífera con la intención de cometer daño corporal,' lo que al amparo de la decisión de *El Pueblo* v. *Nugent,* a que ya nos hemos referido, fué declarado substancialmente suficiente. En este caso el veredicto declara a la acusada solamente culpable de acometimiento, y no puede ser castigada por un delito grave.

"Los otros fundamentos de error no fueron debidamente señalados.

"Se deja sin efecto la sentencia de la corte inferior, y se ordena que se dicte sentencia por el delito de acometimiento, y que se imponga pena de acuerdo con las disposiciones de la sección 143 del Código Penal.''

En ese caso necesariamente también tuvo que demostrar la evidencia que el acometimiento se había llevado a efecto con un arma mortífera cuando no obstante la forma en que aparecía redactado el veredicto la corte sentenciadora impuso al acusado la pena correspondiente al delito de acometimiento con circunstancias agravantes, y la Corte Suprema no se limitó a revocar la sentencia apelada si que la dejó sin efecto y devolvió la causa a la corte *a quo* para que registrara una nueva sentencia por acometimiento imponiendo al acusado la pena que para tal delito fijaba la ley, reconociendo en su consecuencia como legal el veredicto de acometimiento.

Y ése es el curso que debe seguirse a nuestro juicio en el presente caso. Siguiéndolo, la causa quedará definitivamente terminada administrándose en ella aquella relativa justicia que en tantas ocasiones sólo le es dable a los tribunales administrar.

*Se revoca la sentencia apelada y la causa se devuelve a la corte de distrito de su origen para que declare al acusado culpable de acometimiento de acuerdo con el segundo veredicto y le imponga la pena que estime procedente dentro de las facultades que le otorga la sección 5 de la Ley para determinar y castigar acometimiento, etc., aprobada el 10 de marzo de 1904, leyes de 1904, p. 42.*