EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMÓN OLIVERA RIVERA, acusado y apelante.

Núm. 8017.—*Sometido:* Abril 25, 1940. *Resuelto:* Mayo 20, 1940.

R. *Rivera Zayas,* abogado del apelante; R. A. *Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Ramón Olivera Rivera fué acusado por el fiscal de la Corte de Distrito de San Juan del delito de atentado a la vida. El jurado le encontró culpable del de ataque para cometer homicidio y la corte le condenó a sufrir la pena de un año de presidio con trabajos forzados. Contra esa sentencia se interpuso por el acusado el presente recurso.

El primer error que se señala trata de la apreciación errónea que de la evidencia hizo el jurado. Veamos en qué consiste la ofrecida por el fiscal. El día 24 de octubre de 1938 el perjudicado, Amalio Lugo Gutiérrez, trabajaba de portero en un café de esta ciudad conocido por "El Gato Negro." Serían aproximadamente las dos de la madrugada de ese día cuando el acusado entró en el referido café en estado de embriaguez, sin chaqueta y con la camisa por fuera. Lugo le dijo que en esas condiciones no podía permanecer en el café y el acusado se incomodó por ello, a tal extremo, que Antonio Carrasco Carvajal, dueño a la sazón del restaurante, tuvo que ordenar que le sacaran de él, lo que hizo Lugo asistido de otro empleado del establecimiento. Transcurrida media hora, el acusado regresó, y esta vez el cabo de la Policía Insular, David Cintrón, le ordenó que se retirase del lugar. Así lo hizo el acusado acompañado de un repórter de nombre Mariotta, quien interpuso sus buenos oficios. Cerrado el establecimiento a eso de las 2:30 de la madrugada, Lugo se dirigió a otro restaurante de esta ciudad conocido por "La Cafetera," y había terminado de comer unos *sandwiches* y de tomar café acompañado de dos amigos, cuando llegó a dicho sitio el acusado, coincidiendo su llegada con la salida de Lugo. El acusado se dirigió a Lugo en forma despectiva y acto seguido sacó un revólver y le hizo dos disparos alcanzándolo en una pierna y en el tórax lateral derecho. A pesar de los disparos Lugo pudo huir, siendo más tarde ingresado en el Hospital Municipal. En el lugar de los hechos, los amigos que acompañaban a Lugo agre-

dieron y desarmaron al acusado, quien también tuvo que ser asistido en un cuarto de socorro.

La evidencia aportada por la defensa es consistente con la del fiscal excepto en cuanto a que el acusado no se encontraba en estado de embriaguez al concurrir al "Gato Negro," y excepto también en cuanto a que los hechos ocurridos en "La Cafetera" sucedieran sin provocación por parte de Lugo.

Sea ello como fuere, el jurado dirimió el conflicto dando crédito a los testigos del fiscal. Y siendo la evidencia aportada por dichos testigos suficiente a nuestro juicio para justificar el veredicto rendido por el jurado, es nuestro deber sostener y respetar dicho veredicto.

■■ En el segundo señalamiento alega el acusado que el veredicto es nulo porque no revela la verdadera conclusión a que llegó el jurado en sus deliberaciones.

El incidente a que este señalamiento se refiere no consta de la transcripción de la evidencia. Sí aparece de una resolución de la corte declarando sin lugar una moción de nuevo juicio radicada por el acusado, que al regresar de deliberar, el jurado rindió un veredicto de "culpable para cometer homicidio," y advirtiendo el juez que a dicho veredicto le faltaba la palabra "ataque," preguntó al jurado si era su intención declarar al acusado culpable del delito de ataque para cometer homicidio, asintiendo el jurado en corte abierta.

Si bien se advierte que el veredicto es irregular, no es sin embargo tan ambiguo como el acusado pretende, que impida conocer la conclusión verdadera a que llegó el jurado en sus deliberaciones. La corte dió al jurado instrucciones sobre atentado a la vida, ataque para cometer homicidio y acometimiento y agresión grave, así que el veredicto que trajo no deja lugar a dudas de que ninguno otro que no fuera el de "ataque para cometer homicidio" pudo ser aquel de que encontraba al acusado culpable.

El acusado sugiere que el juez debió actuar en consonancia con el artículo 288 del Código de Enjuiciamiento

Criminal, instruyendo "de nuevo al jurado a fin de que éste se retirara a deliberar y trajera el veredicto que fuera el resultado de sus propias conclusiones. . ." Aun cuando aceptáramos que este caso fuera uno en ". . . que se ha equivocado el jurado en la aplicación de la ley. . ." lo que no nos atrevemos asegurar sin un estudio detenido que no es necesario hacer, y que por tanto, fuere de aplicación el artículo invocado, no consta que el juez se apartara de sus preceptos. Éste les preguntó ". . . si era la intención de ellos declarar al acusado culpable de ataque para cometer homicidio, y contestaron que sí. Se volvió a preguntar después de ponerse la palabra 'ataque' y contestaron también que sí. . ." Y nada impedía que el jurado deliberase, si es que tenía que deliberar y resolviese después, en la misma sala del tribunal. Artículo 267 del Código de Enjuiciamiento Criminal.

En el caso de *El Pueblo* v. *Souffront,* 30 D.P.R. 105, la acusación era por un delito de atentado a la vida. El veredicto del jurado decía "culpable de homicidio frustrado." La corte instruyó nuevamente al jurado, que volvió a deliberar trayendo un veredicto de ataque con intención de cometer homicidio. Este Tribunal Supremo resolvió que el primer veredicto expresaba claramente el pensamiento del jurado y que el error era simplemente de palabras.

En el caso de *El Pueblo* v. *Paz,* 12 D.P.R. 99, el jurado trajo un veredicto declarando al acusado ". . . cómplice en el delito de homicidio voluntario." Impugnado el veredicto porque no contenía la palabra "culpable," se resolvió por este tribunal que la omisión de esa palabra no era un defecto fundamental que perjudicase los derechos sustanciales del acusado, cuando el veredicto está redactado en términos tan claros que no dejan lugar a duda alguna.

En *El Pueblo* v. *Asencio,* 16 D.P.R. 355, el veredicto decía:

"Nosotros, los del jurado, y en su representación el presidente que suscribe, declaramos a los acusados Carlos María Asencio 'culpable' en segundo grado, y a Francisco Vélez 'no culpable' de un delito de

incendio malicioso. Mayagüez, enero 19 de 1910.—(Firmado) J. Pico, Presidente del Jurado.''

Ante esta Corte Suprema se alegó que tal veredicto no declaraba al acusado culpable de ningún delito. Se resolvió:

"Pero si se lee totalmente el veredicto, se llegará a la conclusión de que si bien adolece de falta de claridad, esta falta no es de naturaleza tal que implique la ineficacia del documento. No hay duda alguna con respecto a cuál fué la decisión del jurado. Las palabras 'de un delito de incendio malicioso,' se refieren tanto a Francisco Vélez como a Carlos María Asencio y dichas palabras unidas a las anteriormente expresadas, demuestran que el jurado declaró a Carlos María Asencio culpable del delito de incendio malicioso en segundo grado."

Debe desestimarse también el segundo error.

El tercero no merece detenida consideración. Se sostiene en él que el delito de ataque para cometer homicidio del que fué convicto el acusado no está comprendido dentro del de atentado a la vida del cual fué acusado.

En el caso de *El Pueblo* v. *Cartagena,* 54 D.P.R. 870, se dijo lo siguiente:

"El décimo señalamiento de error, último a considerar, dice así:
" 'El tribunal inferior incurrió en error al instruir a los señores del jurado sobre los distintos veredictos que podían considerar.'

"Argumentando este señalamiento de error alega la defensa que la corte, bajo la prueba de este caso, no debió dar instrucciones con respecto a ataque para cometer homicidio. Se trata en este caso de una acusación por atentado a la vida. Se alegó por el acusado la defensa propia y al mismo tiempo provocaciones por parte de la persona contra quien él disparó su arma. En tales circunstancias es indudable que procedía la instrucción sobre homicidio voluntario, pues como de haber muerto Jerónimo Colón hubiera existido en la prueba base suficiente para sostener un veredicto de homicidio voluntario, no habiendo él muerto, el jurado podía rendir un veredicto de ataque con intención de cometer homicidio. Pero sea como fuere, la cuestión resulta académica, pues el jurado rindió un veredicto de acometimiento y agresión grave, no pudiendo causarse perjuicio alguno al acusado al dar instrucciones sobre el delito de ataque con intención de cometer homicidio, ya que el jurado no estimó que tal delito se hubiera cometido.''

Y anteriormente en el caso de *El Pueblo* v. *Alvarado,* 49 D.P.R. 423, tratándose de una acusación de atentado a la vida, este tribunal se expresó así:

"Analizada la evidencia, encuéntrase en verdad que toda ella, tanto la del fiscal como la del acusado, demuestra que éste usó un arma mortífera para acometer a Raspaldo, bien lo hiciera con intención de asesinarlo o de darle muerte o de causarle daño, ya actuara en legítima defensa de su persona, y que por tanto los veredictos que procedían eran los de culpable de atentado a la vida, culpable de ataque para cometer homicidio, culpable de acometimiento con circunstancias agravantes, no culpable, siendo lo más correcto que la corte se hubiera ceñido a ellos en sus instrucciones al jurado."

Así, pues, también debe desestimarse este tercer error.

*En mérito de lo expuesto anteriormente, debe confirmarse la sentencia apelada.*