Los Jueces Asociados Señores Negrón García y Hernández Denton se inhibieron.

EL PUEBLO DE PUERTO RICO, recurrido, *v.* JUAN OYOLA RODRÍGUEZ, acusado y peticionario.

*Número:* CE-91-853 *Resuelto:* 1ro de abril de 1993

*Elías González Mathews*, abogado del peticionario; *Reina Colón de Rodríguez, Subprocuradora General*, y *Jaime L. Vázquez Bernier, Procurador General Auxiliar*, abogados de El Pueblo.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El peticionario Juan Oyola Rodríguez fue acusado por infracción a los delitos de mutilación, amenazas y apropiación ilegal, Arts. 96, 153 y 165, respectivamente, del Código Penal de Puerto Rico, 33 L.P.R.A. secs. 4033, 4194 y 4271.

Luego de celebrado el juicio y sometido el caso, el juez de instancia procedió a impartir las instrucciones al Jurado. Las partes no solicitaron instrucciones especiales, por lo que el juez ofreció las explicaciones de rigor conforme a derecho y al Manual de Instrucciones al Jurado sobre los elementos de los delitos imputados. También instruyó a los miembros del Jurado que podían rendir un veredicto de agresión agravada, el cual es un delito menor incluido en el delito de mutilación, si la prueba así lo justificaba.

A petición de la defensa, se confeccionó una boleta de veredicto adicional por el cargo de agresión agravada. Art. 95 del Código Penal, 33 L.P.R.A. sec. 4032.([1]) Así, pues, se entregaron al Jurado cuatro (4) boletas correspondientes a los tres (3) delitos imputados y al delito subsumido de agresión agravada.([2])

Luego de deliberar, unánimemente el Jurado encontró

---

([1]) Ante la solicitud de la defensa de confeccionar un blanco adicional para el delito de agresión agravada, el juez de instancia previó que la boleta adicional por el delito menor incluido podría "traer confusión" a los miembros del Jurado, pero accedió diciendo que no había problema en prepararla. T.E.P., pág. 26.

([2]) Conforme a la T.E.P., pág. 31, el juez expresó:

"Llevarán también como yo le di alternativa de Mutilación, de Agresión Agravada, eso es discrecional, ustedes son los que determinan. Llevarán un veredicto, si el veredicto fuere Agresión Agravada entonces llenarán este blanco. Si fuese no culpable pues pondrán no culpable. El caso de Mutilación está como Mutilación. Si ustedes entienden que no hubo Mutilación le pondrán no culpable."

no culpable al acusado de los delitos de amenazas y apropiación ilegal. En cuanto al delito de mutilación, fue encontrado culpable por mayoría de nueve (9) a tres (3). Sin embargo, la cuarta boleta, referente al delito menor incluido de agresión agravada, fue devuelta en blanco, esto es, no constaba veredicto, ni la proporción numérica de la votación; tampoco constaba la firma del presidente del Jurado. Ante esta situación, y por entender que el veredicto había sido irregular, el juez ordenó al panel de jurados regresar al salón de deliberaciones a fin de que expresaran en la boleta en blanco la información sobre el particular.(3)

Al regresar por segunda vez el Jurado a Sala, éste entregó al juez un veredicto de culpabilidad por el delito de agresión agravada por mayoría de nueve (9) a tres (3). El juez pidió a las partes que se acercasen al estrado. Luego les comunicó que tenía ante sí dos (2) veredictos de culpabilidad contra el acusado con relación a dos (2) delitos: uno por mutilación y el otro por agresión agravada. El Ministerio Fiscal preguntó si esa era la confusión que tenía el juez. A petición de la defensa, el juez procedió a impartir nuevamente instrucciones al Jurado sobre el delito de mutilación imputado y el delito menor incluido. A solicitud de la Fiscal, el juez les entregó una boleta nueva en blanco para que el Jurado hiciera la determinación final y dio instrucciones de que debían llegar a un veredicto por uno solo de los dos (2) delitos. Por tercera vez, el tribunal envió al Jurado a deliberar.

Finalmente, los miembros del Jurado rindieron un veredicto de culpabilidad por el delito menor de agresión agravada, en proporción de nueve (9) a tres (3). El tribunal hizo

---

(3) En la Transcripción de Evidencia Parcial de 21 de octubre de 1991 se registra la siguiente instrucción del juez de instancia:

"En el [veredicto] que es válido para ustedes que emitieron, pues lo dejarán, en el segundo, pues harán lo que entiendan sobre el particular ... yo pude haberlo resuelto así, pero quería que ustedes ratificaran." T.E.P., pág. 38.

constar que aceptaba el mismo. A preguntas del juez en cuanto a si era esa su voluntad y deseo en términos del fallo final del proceso y si la proporción de votos era la correcta, todos los caballeros y damas del Jurado contestaron en la afirmativa. Antes de concluir el proceso esa tarde, el juez citó a las partes para la lectura de la sentencia.

Cuatro (4) días después de aceptados los veredictos de absolución en dos (2) de los cargos y de culpabilidad por el delito de agresión agravada, el Ministerio Fiscal presentó una moción para solicitar la reinstalación del primer veredicto del Jurado, esto es, por el delito de mutilación. Alegó que aunque el tribunal erró y confundió al Jurado al exigirle llenar la boleta en blanco, la segunda comparecencia del Jurado a Sala, en la cual declaraba culpable de agresión agravada al acusado, no invalidó la determinación inicial de culpabilidad por el delito de mutilación. Al solicitar la reinstalación de este primer veredicto, el Ministerio Fiscal alegó que lo actuado posteriormente era nulo.

Transcurridas seis (6) semanas desde que se presentó la moción de la Fiscal, el tribunal de instancia celebró una vista para discutir dicha solicitud. Durante la misma, el juez indicó que fue su error haber enviado al Jurado a llenar la boleta en blanco ya que el primer veredicto sobre mutilación había sido conforme a derecho.[4] Manifestó el juez que el no haber escrito nada en la boleta correspondiente al delito menor incluido de agresión agravada no anulaba el veredicto de mutilación. Reconoció que no existe

_____

[4] "Tengo que admitir y aceptar que fue una equivocación y un error del Juez el haber remitido los boletos segundos, puesto que ya había un veredicto formal y conforme a derecho en Mutilación. Quizás en un más amplio sentido de la justicia me hizo remitirlo para si ese jurado había entendido. No me percataba de que si había entendido o no había entendido y se aceptaron los veredictos. El único veredicto que vino sin problema fue el delito de Mutilación que era el delito imputado que se hacía. Fue un error de mi parte el haber remitido sucesivamente los veredictos de Agresión Agravada puesto que había uno que vino completo en cumplimiento fiel y exacto a la ley cuando por primera vez y vuelven a sala ellos después de habérsele dado y habérsele ofrecido los veredictos para que actuaran." T.E.P., págs. 68–69.

caso alguno en Puerto Rico que resuelva una situación como ésta. Concluyó que el primer veredicto fue exacto y pidió a las partes que argumentaran sobre el particular.

La Fiscal reiteró su solicitud para la reinstalación del veredicto inicial. La defensa, por su parte, señaló que lo resumido por la Fiscal y lo interpretado por el juez era contrario a lo que surgía de la minuta. Argumentó que dicha minuta goza de la presunción de corrección y no fue impugnada por ninguna de las partes. Aún más, discutió que las objeciones presentadas por el Ministerio Fiscal en su moción eran tardías porque no fueron planteadas cuando el juez envió al Jurado a deliberar por segunda y tercera vez. El abogado defensor solicitó que, en vista del error que el juez admitió haber cometido, se le concediese nuevo juicio a su defendido a fin de garantizarle un debido proceso de ley, "porque aquí no estamos para que los acusados paguen por los errores de los abogados o los jueces". T.E.P., pág. 80. Finalmente, la defensa concluyó que el veredicto de agresión agravada fue traído mientras el Jurado estaba válidamente constituido en el salón de deliberaciones y fue aceptado como válido después de haber sido corroborado por el propio juez como la voluntad final y absoluta de los miembros del Jurado en proporción de nueve (9) a tres (3). Solicitó que se mantuviese el veredicto por agresión agravada o, en la alternativa, se concediera nuevo juicio.

Luego de escuchar los argumentos de ambas partes, el tribunal de instancia dejó sin efecto la aceptación del veredicto por agresión agravada y, en su lugar, aceptó y reinstaló el veredicto inicial de infracción al citado Art. 96 del Código Penal (mutilación). A renglón seguido, señaló la fecha para el acto de lectura de sentencia y ordenó el encarcelamiento del acusado mientras se refería el caso al Oficial Probatorio.

Es de esta Resolución de 6 de diciembre de 1991, dictada en corte abierta por el Honorable Juez Félix Ortiz Juan, del Tribunal Superior, Sala de Bayamón, que el peticionario recurre ante nos.

Resolvemos mediante el mecanismo procesal de mostración de causa.

El peticionario hace el señalamiento de error siguiente:

1. *El tribunal erró al dejar sin efecto el veredicto por el delito de agresión agravada traído por el jurado.*
2. *El tribunal erró al no ordenar un nuevo juicio.*

Le asiste la razón al peticionario en cuanto al primer error señalado.

I

█ Se ha definido que el veredicto "es el consenso del jurado respecto a la inocencia o culpabilidad del acusado. El mismo se presentará por escrito por el Presidente del Jurado, y deberá constituir la expresión libre y verdadera de la opinión de los miembros del jurado". D. Nevares-Muñiz, *Sumario de Derecho Procesal Puertorriqueño*, 3ra ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1989, pág. 149. Véase también la Regla 145 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

En el ámbito federal se ha explicado la diferencia entre lo que constituye el veredicto que trae el Jurado en un sobre sellado y el veredicto final del Jurado que es leído en corte abierta y es aceptado por el juez.

The jury's verdict is that which the jury announces to the court, in open court, and is received and recorded as the jury's finding. A sealed verdict is an agreement in writing, reached by the jurors, and does not become the jury's verdict until, as just stated, it is announced to and received by the court. (Escolio omitido.) 5A *Moore's Federal Practice* Sec. 49.07, pág. 49-67.

 Existen varios posibles veredictos. El Jurado podrá declarar al acusado, con respecto al delito imputado en el pliego acusatorio, "no culpable" o "culpable". También puede emitir un veredicto de "no culpable por razón de locura". La Regla 146 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, permite emitir un veredicto con respecto a un delito menor incluido en el delito imputado sobre el cual haya desfilado prueba en el juicio.[5]

En repetidas ocasiones hemos explicado que, para considerar un delito menor subsumido en otro delito,

> el delito menor debe estar comprendido en el mayor por el cual se le acusa y que los hechos expuestos para describir la comisión del delito mayor deben contener las alegaciones que son esenciales para constituir una imputación por el menor. Si el delito mayor incluye todos los elementos de hecho y los requeridos por la Ley en relación con el menor, el mayor incluye al menor; pero si el delito menor requiere algún otro elemento indispensable que no es parte del delito mayor entonces el menor no está comprendido en el mayor. La prueba para determinar si un delito está incluído en otro es determinar si no se puede cometer el primer delito sin que necesariamente se cometa el segundo. *Pueblo v. Concepción Sánchez*, 101 D.P.R. 17, 19 (1973). Véase, además, *Pueblo v. Ramos López*, 85 D.P.R. 576, 580 (1962).

El peticionario Juan Oyola Rodríguez fue acusado de infringir el Art. 96 del Código Penal, *supra*, esto es, por mutilación.[6] El juez de instancia instruyó al Jurado con

---

[5] "Si el veredicto de culpabilidad se refiere a un delito con distintos grados o a un delito con otros delitos inferiores necesariamente comprendidos en el delito mayor, el veredicto rendido especificará el grado o el delito menor por el cual se hubiere encontrado culpable al acusado." 34 L.P.R.A. Ap. II, R. 146.

[6] La declaración jurada del testigo Rafael Rivera Ortiz, la cual fue aceptada como *Exhibit* por ambas partes, resume los hechos. La víctima de las heridas, Ramón Febus, fue con el testigo y con Ray Agosto a lavar un automóvil al *Car Wash* de Van Scoy en el barrio Buena Vista de Bayamón. El peticionario y otra persona apodada Chito se encontraban allí lavando una guagua. El testigo lavó las alfombras y las tendió en unos alambres que habían en el *Car Wash*. Cuando el testigo fue a buscarlas, vio cuando el peticionario y Chito montaron las alfombras en la guagua. El testigo se lo informó a Ramón y a Rey, y los tres (3) se dirigieron a la casa del

respecto a este delito y al delito menor incluido, que es agresión agravada.

■ En este caso el juez envió tres (3) veces a deliberar al Jurado. La primera vez el Jurado trajo un veredicto absolutorio en los casos de amenazas y apropiación ilegal, veredicto de culpabilidad en el caso de mutilación y dejó en blanco la cuarta boleta que se le había suministrado correspondiente al delito de agresión agravada, la cual también tenía el epígrafe de mutilación. La cuarta boleta había sido preparada a petición de la defensa y el juez había dado las instrucciones pertinentes con respecto a los elementos del delito de mutilación y del delito menor incluido de agresión agravada.([7]) Recordemos que la Regla 147 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone que el acusado podrá ser declarado culpable de la comisión de cualquier delito inferior necesariamente comprendido en el delito que se le imputa.

Después de recibir y examinar los veredictos, el juez consideró que el Jurado debía llenar la boleta que había sido dejada en blanco. Dio instrucciones al alguacil para que la entregara nuevamente al presidente del Jurado, a

---

peticionario, pero antes lo encontraron en camino hacia allá en el Colmado Sabana de Buena Vista.

"Entonces vino Ramón y le dijo que le devolviera las alfombras a lo que Juan contestó 'que tú quieres que te pegue cuatro tiros' entonces le dijo que ni él ni la alfombra valían na [sic]. Entonces cojió [sic] una botella de Malta y se la rompió en la cabeza, entonces cojió [sic] Ray y lo llevó al Dispensario de Buena Vista en el ocho. ... Deseo aclarar, que luego de haberle roto la botella en la cabeza, le cortó la·cara y la espalda con la botella rota, y en la mano y el dedo de la mano izquierda."

([7]) Este es el texto de la acusación presentada contra el peticionario por el delito de infracción al Art. 96:

"Allá en o para el día 24 de septiembre de 1990, en Bayamón, Puerto Rico, que forma parte del Tribunal Superior de Puerto Rico, sala de Bayamón, Puerto Rico, el referido acusado JUAN OYOLA RODRIGUEZ, ilegal, voluntaria, maliciosa y criminalmente, e intencionalmente, desfiguró y alteró permanentemente la apariencia del rostro del ser humano RAMON FEBUS ORTIZ, ya que con una botella le infirió heridas en el lado izquierdo del rostro, donde le tomaron treinta y seis puntos de sutura al referido perjudicado."

fin de que el Jurado volviera al salón de deliberaciones. El propio juez de instancia reconoció que el tribunal pudo haber resuelto este asunto, pero quiso que las damas y los caballeros del Jurado ratificaran. Véase Minuta de 21 de octubre de 1991, pág. 2.

Ninguna de las Reglas de Procedimiento Criminal considera una situación como la surgida en el caso ante nos, esto es, si viene obligado el Jurado a firmar y expresarse en torno a una boleta en blanco correspondiente a un delito menor comprendido; por el cual no se había radicado acusación alguna. Resolvemos en la negativa. Un análisis integral de las Reglas de Procedimiento Criminal nos permite concluir que el juez de instancia erró al enviar al Jurado por segunda vez a deliberar, tal como el propio juez lo aceptó en su Resolución de 6 de diciembre de 1991. Veamos por qué.

█ Cuando se le ordenó al Jurado que regresara al salón de deliberaciones para que llenase la boleta en blanco, ya éste había emitido un veredicto de culpabilidad por el delito de mutilación, el cual rindió conforme a derecho, por lo que no procedía la aplicación de la Regla 148 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Esta regla se invoca cuando el Jurado se equivoca en la aplicación de la ley,[8] es decir, emite un veredicto erróneo o contrario a la ley. Tampoco se trataba de un veredicto defectuoso, el cual no permite al tribunal determinar la intención del Jurado, por lo que no era de aplicación la Regla 149 de Procedi-

---

[8] "Si al rendirse un veredicto de culpabilidad el tribunal considerare que el jurado se ha equivocado en la aplicación de la ley, el juez que lo presida podrá explicar al jurado sus razones y ordenarle que vuelva a considerar el veredicto. Si después de esto se rindiere el mismo veredicto, éste será aceptado por el tribunal. Nada de lo aquí dispuesto será aplicable a un veredicto absolutorio el cual deberá ser aceptado siempre por el tribunal." 34 L.P.R.A. Ap. II, R. 148.

miento Criminal.(⁹) En resumen, no se trataba de un veredicto erróneo ni de un veredicto defectuoso.

Si el juez tuvo alguna duda en cuanto al veredicto del Jurado, por razón de no haberse llenado la boleta correspondiente al delito subsumido, en lugar de enviar nuevamente al Jurado a deliberar, el juez pudo utilizar su facultad de examinar individualmente a los miembros del Jurado (*polling*) para corroborar que el veredicto de culpabilidad por mutilación era, efectivamente, el veredicto emitido.(¹⁰) Véase Regla 151 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. De esta manera quedaba eliminada la boleta dejada en blanco, la cual se entregó en caso de que el Jurado considerase que, a base de la prueba, sólo se había cometido el delito de agresión agravada.(¹¹) Sin embargo, el juez no previó que el Jurado trajese dos veredictos de culpabilidad en lugar de uno cuando los envió por segunda vez a deliberar.(¹²)

---

(⁹) "Si el veredicto fuere tan defectuoso que el tribunal no pudiere determinar la intención del jurado de absolver o condenar al acusado por el delito bajo el cual el acusado pudiera ser convicto de acuerdo con la acusación, o no pudiere determinar en qué cargo o cargos el jurado quiso absolver o condenar al acusado, el tribunal podrá instruir al jurado para que reconsidere dicho veredicto y exprese claramente su intención. Pero si el jurado persistiere en rendir el veredicto defectuoso, tal veredicto será aceptado, y el tribunal dictará un fallo absolutorio." 34 L.P.R.A. Ap. II, R. 149.

(¹⁰) E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Columbia, Ed. Forum, 1992, Vol. II, págs. 344-345. Aunque el juez puede comprobar el veredicto del Jurado conforme a la Regla 151 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, no puede, sin embargo, preguntarle a *cada miembro del Jurado* cuál fue su voto en particular, porque éste es secreto. *Pueblo v. Ruiz Torres*, 99 D.P.R. 830, 832 (1971).

(¹¹) En el caso contrario, cuando la boleta dejada en blanco sea la correspondiente al delito mayor imputado, el juez podrá también examinar al Jurado según la Regla 151 de Procedimiento Criminal, *supra*, para asegurarse que el Jurado rindió el veredicto correspondiente al delito menor incluido.

(¹²) La doctrina tampoco considera que el Jurado pueda emitir a la misma vez dos (2) veredictos de culpabilidad, uno por el delito imputado y otro por el delito subsumido:

"La intención del jurado debe surgir claramente del veredicto. De manera, que en casos en que se haya impartido instrucciones al jurado por delitos menores incluidos en la acusación, un veredicto de culpable podría ser defectuoso en tanto no estaría claro si la convicción es por el delito imputado en la acusación o por uno menor

■ Al regresar el Jurado con el veredicto de culpabilidad por el delito menor incluido de agresión agravada sin haber modificado el veredicto inicial de culpabilidad por mutilación, el juez se percató que tenía ante él dos (2) veredictos excluyentes entre sí. Esta situación irregular fue propiciada por el error inicial del juez cuando envió a deliberar por segunda vez al Jurado sin asegurarse de recordarle a sus miembros que tenían que traer sólo un veredicto, tal y como les había instruido originalmente.[13]

En el momento en que el Jurado trajo los dos (2) veredictos, ya no era posible para el tribunal determinar cuál era la verdadera intención del Jurado, porque el juez viene obligado a aceptar sólo un veredicto. Por una parte, podía interpretarse que el Jurado ratificaba la culpabilidad por el delito de mutilación al declarar al acusado culpable por agresión agravada por cuanto éste es un delito menor incluido; es decir, el que es culpable de mutilación necesariamente ha cometido una agresión. Por otro lado, también era plausible interpretar que el Jurado había reconsiderado y cambiado su veredicto a uno de agresión agravada, como de hecho ocurrió cuando se le entregó una nueva y única boleta en blanco para que deliberase por tercera vez.

Al darse cuenta que, en lugar de uno, tenía ante sí dos (2) veredictos de culpabilidad correspondientes a una sola acusación, el juez trató de enmendar su error e instruyó nuevamente al Jurado con respecto a ambos delitos. A pe-

---

incluido. En ese caso será necesario instruir nuevamente al jurado y enviarlo a deliberar." D. Nevares-Muñiz, *Sumario de Derecho Procesal Penal Puertorriqueño*, 3ra ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1989, pág. 150.

[13] "... los tribunales de instancia tienen la ineludible responsabilidad de velar porque sus instrucciones sean correctas, claras, precisas, y lógicas." *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 150 (1985). El examen de la Transcripción de Evidencia Parcial con respecto a las instrucciones ofrecidas al Jurado antes de ir a deliberar por primera vez revela que éstas fueron hechas conforme a derecho. Con respecto al delito imputado de mutilación, el juez los instruyó a rendir un veredicto: "Llevarán un veredicto, si el veredicto fuere Agresión Agravada entonces llenarán ese blanco. Si fuese no culpable pues pondrán no culpable." T.E.P., pág. 31.

sar de que envió al Jurado a deliberar por tercera vez, ya el error inicial había sido cometido. Aun cuando el panel de jurados estaba válidamente constituido cuando regresó tras la tercera deliberación, conforme a *Pueblo v. Piazza*, 60 D.P.R. 575, 584 (1942), y que el juez verificó uno por uno que ellos encontraron culpable al acusado por el delito de agresión agravada, Regla 151 de Procedimiento Criminal, *supra*, el error inicial del juez al enviar a deliberar al Jurado por segunda vez había creado suficiente confusión para generar duda en cuanto a la verdadera intención del Jurado. Por causa de ello, semanas más tarde (después de haber aceptado el veredicto de agresión agravada), el tribunal lo dejó sin efecto a raíz de una moción del Ministerio Fiscal; en su lugar, el tribunal aceptó y reinstaló el veredicto inicial de mutilación.

Tiene razón el peticionario al señalar que fueron tardías las objeciones de la Fiscal mediante moción interpuesta cuatro (4) días después de finalizado el juicio. Se perjudicaron los derechos del acusado cuando, mediante la Resolución de 6 de diciembre de 1991, el tribunal anuló el veredicto final del Jurado por el delito subsumido de agresión agravada —el único que aceptó el juez de instancia— y se reinstaló el veredicto rendido originalmente por el delito imputado de mutilación.

■ En *Pueblo v. Hernández Olmo*, 105 D.P.R. 237, 241 (1976), explicamos que la actuación de un juez al recibir un veredicto (cuando luego procede a enterarse del mismo, lo pasa a la secretaria de Sala para su lectura y dicta fallo condenatorio y de convicción), crea un estado de derecho irreversible, porque de ese modo termina el juicio.

■ Antes de que el veredicto sea aceptado, el juez puede ordenar al Jurado que reconsidere, por ejemplo, un veredicto erróneo o defectuoso. Reglas 148 y 149 de Procedimiento Criminal, *supra*. Una vez se acepta el veredicto,

esta aceptación constituye el "punto final a la intervención del jurado en el proceso, y cierre de la función deliberativa". (Escolio omitido.) *Pueblo v. Hernández Olmo*, supra, pág. 242. Véase *Pueblo v. Sabater Mangual*, 95 D.P.R. 597, 601 (1967).

En *Pueblo v. Hernández Olmo*, supra, pág. 242, discutimos las implicaciones constitucionales que tiene la aceptación del veredicto por parte del tribunal:

> Se concreta con esa aceptación del veredicto la exposición del acusado a castigo, y excluye ulterior riesgo. Art. II, Sec. 11, Constitución del Estado Libre Asociado. Por tanto, el segundo veredicto contra el recurrente por infracción al Art. 87 del Código Penal [en este caso] es nulo.

El profesor Chiesa Aponte comenta sobre el particular que "[p]ara poder determinar cuándo se activa la cláusula de doble exposición por razón de veredicto absolutorio del jurado, hay que tener en cuenta que un veredicto no es final hasta que haya sido aceptado por el Tribunal y leído en corte abierta". E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1992, Vol. II, pág. 369 esc. 49.

En *Pueblo v. Hernández Olmo*, supra, el juez de instancia aceptó el veredicto de culpabilidad por el delito de homicidio involuntario, delito menor incluido dentro del delito imputado de imprudencia crasa o temeraria al conducir un vehículo de motor. Art. 86 y 87 del Código Penal, 33 L.P.R.A. secs. 4005 y 4006. Luego de pasar el veredicto a la secretaria de Sala para su lectura, el juez dictó fallo en el que declaró al acusado culpable y convicto de homicidio involuntario. Al percatarse que había cometido un error por razón de haber denegado dar al Jurado las instrucciones del delito subsumido solicitadas por la defensa, envió al Jurado a deliberar nuevamente y se produjo un segundo veredicto por el delito de imprudencia crasa. El

juez aceptó también este segundo veredicto y procedió a dictar nuevo fallo de convicción. En virtud de lo dispuesto en nuestra Constitución, anulamos este segundo fallo; dadas las circunstancias particulares de ese caso, reestablecimos el primer veredicto aceptado por el tribunal de instancia.

■ A diferencia de lo que ocurrió en *Pueblo v. Hernández Olmo*, supra, en el caso ante nos el tribunal sólo aceptó uno de los veredictos: el de culpabilidad por el delito de agresión agravada. El juez nunca aceptó el veredicto por mutilación antes de finalizar el juicio. Desde el momento en que el juez aceptó el veredicto final y dictó fallo condenatorio, no era posible reinstalar el veredicto por el delito de mutilación. Así, pues, mediante resolución posterior a la aceptación del veredicto que dio fin al juicio, el tribunal no podía anular la convicción por agresión agravada. Sólo un tribunal apelativo tiene facultad para anular un veredicto aceptado por el juez, revocar el fallo y reinstalar otro en su lugar. *Pueblo v. Alvarado*, 49 D.P.R. 423 (1936).

## II

Luego de la anulación del veredicto por agresión agravada y la errónea reinstalación del veredicto por mutilación, veredicto que nunca fue aceptado durante el juicio por el foro de instancia, de ordinario concederíamos la celebración de un nuevo juicio. No obstante, por razón de haberse dictado sentencia, concluimos que no hay necesidad de ordenar un nuevo juicio por cuanto el peticionario fue sentenciado por el delito de agresión agravada (grave).[14] Esta

---

[14] "Habiendo sido el acusado Juan Oyola Rodríguez juzgado debidamente y declarado convicto de un delito de Agresión Agravada Grave el día 21 de octubre de 1991, el Tribunal lo condena a la pena de doce (12) años a cumplir consecutivamente con cualquier pena que esté cumpliendo." Sentencia de 23 de diciembre de 1991. No

sentencia restituye y reconoce el·veredicto del Jurado aceptado por el juez durante el juicio. De esta manera se subsanó el error cometido por el tribunal de instancia en su resolución al anular el veredicto de agresión agravada.

De un examen de la sentencia que obra en autos se desprende que Juan Oyola Rodríguez fue sentenciado por haber infringido el Art. 96 del Código Penal, *supra* (mutilación) rebajado al delito de agresión agravada (grave). La restitución en la sentencia del fallo condenatorio por agresión agravada dejó sin efecto práctico la reinstalación del veredicto por mutilación. Quedaron así resguardados todos los derechos del peticionario. Al presente, el peticionario se encuentra disfrutando los beneficios de una sentencia suspendida.

No obstante, al examinar el texto de la sentencia dictada contra el peticionario nos percatamos que la pena impuesta por el foro de instancia es mayor que aquella que legalmente corresponde al delito de agresión agravada (grave), delito por el cual fue condenado. Al peticionario se le impuso erróneamente una pena de reclusión de doce (12) años en lugar de imponérsele la pena que dispone el Art. 95 del Código Penal, *supra*, para el delito de agresión agravada (grave), es decir, tres (3) años.[15] Ello constituye un error que amerita la devolución del caso para que se resen-

---

consta en autos que la defensa se opusiera a que se efectuara el acto de lectura de sentencia.

[15] El Art. 95 del Código Penal, en lo pertinente, dispone:

"Se considerará la agresión agravada como delito grave aparejando pena de reclusión por un término fijo de tres (3) años:

"(b) Cuando se infiere grave daño corporal a la persona agredida.

"De mediar circunstancias agravantes la pena fija establecida podrá ser aumentada hasta un máximo de cinco (5) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de dos (2) años.

"El Tribunal podrá imponer la pena de restitución en adición a la pena de reclusión establecida o ambas penas." 33 L.P.R.A. sec. 4032.

tencie al peticionario por el delito de agresión agravada (grave), a fin de que se reduzca la pena conforme a lo dispuesto en el citado Art. 95 del Código Penal.

Bajo estas circunstancias, aunque revocamos la resolución recurrida, se devuelve el caso para que el foro de instancia resentencie al peticionario por el delito de agresión agravada (grave), imponiéndole la pena que corresponda conforme a lo dispuesto en el Código Penal.

Por los fundamentos antes expresados, *se dicta sentencia revocando la Resolución de 6 de diciembre de 1991 emitida por el Tribunal Superior, Sala de Bayamón, y devolviendo el caso para que el foro de instancia resentencie al peticionario Juan Oyola Rodríguez por el delito de agresión agravada (grave) y le imponga la pena que corresponda conforme a lo dispuesto en el Código Penal.*

El Juez Asociado Señor Rebollo López no intervino.