

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Abraham Ayala García<br><br>Recurrido | Certiorari<br><br>2012 TSPR 120<br><br>186 DPR \_\_\_\_ |

Número del Caso: CC-2009-795

Fecha: 13 de julio de 2012

Tribunal de Apelaciones:

      Región Judicial de Fajardo Panel X

Oficina de la Procuradora General:

      Lcda. Zaira Z. Girón Anadón
      Subprocuradora General

      Lcda. Lisa M. Durán Ortiz
      Procuradora General Auxiliar

Abogado de la Parte Recurrida:

      Lcdo. Luis G. Gutiérrez Marcano
      Sociedad Para Asistencia Legal

Materia: Ley 54 – Prevención e intervención con la violencia doméstica – Arts. 3.1, 3.2 y 3.3 de la ley; delito menor incluido.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico
        Peticionario

            v.                                      *Certiorari*

Abraham Ayala García              CC-2009-795
        Recurrido



Opinión del Tribunal emitida por la Jueza Asociada señora FIOL MATTA




En San Juan, Puerto Rico, a 13 de julio de 2012.

Nos corresponde analizar si el delito de maltrato contenido en la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley 54 de 1989, es uno menor incluido en el de maltrato mediante amenaza que tipifica esa ley. Asimismo, debemos determinar si se justifica dejar en libertad a una persona acusada por maltratar a su pareja debido a que se le sentenció por un delito distinto al imputado, aunque se probó que había cometido aquel por el cual se le acusó.

I

La señora Moraima Vázquez Cotto y el señor Abraham Ayala García vivieron juntos durante seis

años y son madre y padre de dos niñas. A mayo de 2008, llevaban un año y dos meses separados.

El 12 de mayo de 2008, la señora Vázquez Cotto se encontraba en el balcón de su casa junto a sus dos hijas y su pareja actual cuando el señor Ayala García llegó en la guagua de su madre y se estacionó frente a la residencia. El señor Ayala García les gritó: "Aquí no va a haber *break* pa' nadie. Rompieron el cristal de la guagua de mi mai y yo sé que fueron ustedes". Luego, señaló a Vázquez Cotto y le dijo "a ti te voy a joder donde quiera que te coja", la insultó y se marchó en la guagua. La señora Vázquez Cotto llamó a la Policía para notificar lo sucedido. Indicó que temía por su vida, pues había experimentado episodios violentos de su ex pareja anteriormente.[1]

El mismo día, se presentaron dos denuncias contra el señor Ayala García. En una se imputaba violación al artículo 3.2 de la Ley 54, que castiga el maltrato a la pareja en modalidad agravada cuando éste se comete en presencia de menores de edad, en violación de una orden de protección o tras penetrar en la morada de la víctima, entre otras circunstancias. La otra denuncia fue por violación al artículo 3.3 de la misma ley, que castiga el maltrato mediante amenaza.[2] No obstante, en la vista

---

[1] Exposición narrativa estipulada de la prueba, Apéndice del Certiorari, pág. 7.

[2] Arts. 3.2 y 3.3, Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989 [Ley 54], 8 L.P.R.A. secs. 632-633.

preliminar sólo se encontró causa para acusar por el artículo 3.3. La acusación lee:

> El referido imputado, Abraham Ayala García, allá en o para el día 29 de abril de 2008, en Río Grande, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de Fajardo, ilegal, voluntaria, maliciosa y criminalmente, violó el Art. 3.3 de la Ley 54, consistente (*sic*) en que el aquí imputado amenazó a la Sra. Moraima Vázquez Cotto, persona con quien convivió y han procreado dos hijos. Consistente (*sic*) en que le manifestó "te voy a joder, eres una puta, cabrona, donde te coja te voy a joder". Sintiendo ésta temor por su vida. Alegando la víctima que tiene miedo porque siempre anda sola con sus hijos.[3]

En el juicio, celebrado el 8 de septiembre de 2008, la señora Vázquez Cotto fue la testigo de cargo. Según la exposición narrativa de la prueba estipulada, Vázquez Cotto testificó sobre lo sucedido el 12 de mayo de 2008.[4] Además de la descripción de ese incidente, narró que el 29 de abril de 2008, en la mañana, ella se despertó porque estaban tocando fuertemente en la ventana de la cocina y luego en la puerta de la casa. Entonces, vio al señor Ayala García, quien aparentemente había brincado la verja de la residencia, y estaba gritándole que saliera, que "qué carajos ella se creía" y le reclamaba, con actitud

---

[3] Acusación presentada el 2 de julio de 2008, Expediente del Tribunal de Primera Instancia NSCR200800910 [Expediente TPI], pág. 2. Se enmendó el pliego acusatorio para que indicara la fecha correcta de los hechos: 12 de mayo de 2008. *Véase* Minuta del Juicio, 8 de septiembre de 2008, Expediente TPI, págs. 17A-17B.

[4] El testimonio de la agente que tomó la querella el 12 de mayo se estipuló por ser prueba acumulativa. Exposición narrativa estipulada de la prueba, Apéndice del Certiorari, pág. 7.

agresiva, que él tenía derecho a ver sus hijas.[5] Ella le contestó que no podría ver a las niñas hasta que solicitara los documentos judiciales que establecían las relaciones paterno-filiales. Según Vázquez Cotto, el señor Ayala García se marchó enojado. Ella llamó a la Policía y luego solicitó una orden de protección, la cual fue expedida.

Asimismo, Vázquez Cotto indicó en el juicio que anteriormente se habían dado sucesos de violencia doméstica, que la habían llevado a solicitar órdenes de protección en tres ocasiones. A preguntas de la defensa, también señaló que, a pesar de que el acusado vivía cerca de su casa y de que la Policía se tardó tres semanas en arrestarlo después de la vista de causa para arresto o Regla 6, Ayala García no volvió a buscarla. No obstante, dijo que sentía miedo debido a los incidentes previos.[6]

La jueza de instancia halló al señor Ayala García culpable por violar el artículo 3.1 de la Ley 54, que sanciona el empleo de fuerza física, violencia psicológica, intimidación o persecución contra la pareja o ex pareja.[7] El

---

[5] Exposición narrativa estipulada de la prueba, Apéndice del Certiorari, págs. 6-7.

[6] Exposición narrativa estipulada de la prueba, Apéndice del Certiorari, pág. 7.

[7] Art. 3.1, Ley 54, 8 L.P.R.A. sec. 631. La minuta del juicio indica: "Sometido el caso por las partes, el tribunal encuentra al acusado culpable por infracción al Art. 3.1 de Ley 54". Minuta del Juicio, 8 de septiembre de 2008, Expediente TPI, pág. 17B. No obstante, la orden para encarcelar provisionalmente al señor Ayala García que se dictó posteriormente corresponde al cargo por el artículo 3.3. Auto de Prisión Provisional, 6 de noviembre de 2008, Expediente TPI, pág. 21. Asimismo, la Minuta de la Vista de

9 de diciembre de 2008, le impuso una sentencia de 3 años de prisión, que es el término máximo de cárcel dispuesto para violaciones tanto a dicho artículo 3.1 como al artículo 3.3 de la Ley 54.[8]

El señor Ayala García apeló la sentencia. Indicó que el Tribunal de Primera Instancia erró al encontrarlo culpable por un delito distinto a aquel por el cual se le acusó sin ser ese un delito menor incluido en el imputado y al imponerle la pena máxima establecida para dicho delito sin justificación.[9] El Ministerio Público replicó que el delito de maltrato del artículo 3.1 está subsumido en el de maltrato mediante amenaza del artículo 3.3 porque el primero requiere intimidación, y justificó la pena impuesta

---

Lectura de Sentencia indica "artículo 3.3" en el epígrafe. Minuta de 9 de diciembre de 2008, Expediente TPI, pág. 22.

[8] La Sentencia indica que se impone "una pena de cárcel de TRES (3) AÑOS por el delito de epígrafe". En el epígrafe se señala que el caso es por: "Art. 3.1 Ley 54 Reclasificado a Art. 3.3 Ley 54". Sentencia, 9 de diciembre de 2008, Expediente TPI, pág. 24. Dado que el delito imputado era por el artículo 3.3 pero en la minuta del juicio aparece que el acusado fue hallado culpable por el artículo 3.1 y no contamos con la transcripción de los procedimientos, no queda claro si la Sentencia se dictó por violación al artículo 3.1, reclasificado *de* artículo 3.3, o si en la Sentencia se pretendió hacer constar que, aunque se declaró la culpabilidad por el artículo 3.1, ésta debía ser por el artículo 3.3 imputado, y por eso el epígrafe leyó artículo 3.1 reclasificado *a* artículo 3.3. Sin embargo, el Tribunal de Apelaciones no hizo referencia a estas incongruencias y las partes señalan que el señor Ayala García fue sentenciado por infringir el artículo 3.1, por lo que analizaremos el caso partiendo de la premisa de que la convicción fue por el artículo 3.1.

[9] Escrito de Apelación presentado el 17 de septiembre de 2008, Apéndice del Certiorari, págs. 2-3; Alegato del Apelante ante el Tribunal de Apelaciones presentado el 16 de marzo de 2009, Apéndice del Certiorari, págs. 9-25.

por el foro de instancia dentro de la discreción que tiene para ello, pues el acusado dio resultado positivo a marihuana y heroína en las pruebas de sustancias controladas, llevó a cabo la conducta delictiva frente a sus hijas y ya había incurrido en situaciones de violencia contra su ex pareja.[10]

El Tribunal de Apelaciones concluyó que el delito de maltrato del artículo 3.1 no es uno menor incluido en el de maltrato mediante amenaza del artículo 3.3, por lo que no se podía hallar culpable al acusado del primer delito cuando el que se le imputó fue el segundo. Ordenó la excarcelación del señor Ayala García, basándose en la Regla 38(d) de Procedimiento Criminal. Ésta dicta que, cuando la prueba presentada no establece los elementos del delito imputado y sí los de un delito distinto no incluido en aquel por el cual se acusó, procede el sobreseimiento del proceso penal.[11]

El Ministerio Público solicitó al foro apelativo que reconsiderara su decisión para que no quedase impune la conducta antijurídica por la cual el señor Ayala García fue acusado y que, según alegó, se probó más allá de duda razonable. Enfatizó en que la absolución no se debió a que la prueba de cargo resultara insuficiente o inverosímil

---

[10] Alegato del Pueblo ante el Tribunal de Apelaciones presentado el 15 de abril de 2009, Apéndice del Certiorari, págs. 26-43.

[11] Pueblo v. Ayala García, Sentencia del Tribunal de Apelaciones KLAN20082008 de 18 de junio de 2009, Apéndice del Certiorari, págs. 47-62. Uno de los jueces del panel apelativo disintió sin opinión escrita.

para probar el delito imputado, sino a un error de derecho del foro de instancia, y solicitó que se modificara la sentencia apelada y se ordenara al foro de instancia emitir un dictamen de culpabilidad por el delito de maltrato mediante amenaza por el cual el señor Ayala García fue acusado.[12] Luego de que el Tribunal de Apelaciones denegara lo solicitado, el Ministerio Público recurrió a este Tribunal con los mismos argumentos que presentó en la reconsideración ante el foro apelativo.[13]

El 15 de marzo de 2010, expedimos el recurso. El Ministerio Público presentó su alegato y retomó su argumento de que se debía reinstalar la sentencia del Tribunal de Primera Instancia porque el delito de maltrato del artículo 3.1 es uno menor incluido en el de maltrato mediante amenaza del artículo 3.3. En la alternativa, solicitó que se modificara el fallo y se dictara sentencia por el delito imputado. Mientras, el señor Ayala García indicó en su alegato que el delito de maltrato no está subsumido en el de maltrato mediante amenaza porque el primero no siempre implica intimidación y requiere un patrón recurrente para que se cometa bajo dicha modalidad, así como porque ambos delitos conllevan la misma pena. Señaló, además, que ni el pliego acusatorio ni la prueba

---

[12] Moción de reconsideración ante el Tribunal de Apelaciones presentada el 7 de julio de 2009, Apéndice del Certiorari, págs. 63-69.

[13] Pueblo v. Ayala García, Sentencia del Tribunal de Apelaciones KLAN20082008 de 18 de junio de 2009, Apéndice del Certiorari, págs. 71-73; Petición de Certiorari ante el Tribunal Supremo de 22 de septiembre de 2009.

presentada demostraron más allá de duda razonable que hubiesen ocurrido episodios de maltrato adicionales al de la amenaza que se le imputó.

Con el beneficio de ambas comparecencias, pasamos a resolver.

## II

Toda persona acusada, por mandato constitucional, tiene derecho a conocer la naturaleza y la causa de la acusación.[14] Ésta, según la Regla 35 de Procedimiento Criminal, tiene que contener "una exposición de los hechos esenciales constitutivos del delito redactada en lenguaje sencillo, claro y conciso, y de tal modo que pueda entenderla cualquier persona de inteligencia común".[15] Además, debe incluir la cita de la ley que se alegue que se infringió. No obstante, omitirla o incluir una cita errónea se considera sólo un defecto de forma.[16] Como explica el profesor Ernesto Chiesa, si los hechos imputados son constitutivos de algún delito bajo las leyes penales de Puerto Rico, la acusación será suficiente, a menos que de esos hechos no se pueda identificar qué delito se cometió o se demuestre que ese error de forma perjudica los derechos

---

[14] Art. II sec. 11, Const. P.R.

[15] 34 L.P.R.A. Ap. II, R. 35(c). *Véanse* Pueblo v. Pérez Feliciano, 2011 T.S.P.R. 199 (Sentencia); Pueblo v. Rivera Rivera, 145 D.P.R. 366, 378 (1998); Pueblo v. Flores Betancourt, 124 D.P.R. 867, 883 (1989); Pueblo v. González Olivencia, 116 D.P.R. 614, 617-618 (1985); Pueblo v. Calviño Cereijo, 110 D.P.R. 691, 693-694 (1981); Pueblo v. Santiago Cedeño, 106 D.P.R. 663, 666 (1978).

[16] 34 L.P.R.A. Ap. II, R. 35(d).

sustanciales del imputado.[17] Lo importante es que el pliego acusatorio provea la información necesaria para que el acusado pueda preparar su defensa adecuadamente.[18]

El acusado, si el Ministerio Público prueba más allá de duda razonable que cometió los hechos alegados, puede ser declarado culpable por el delito imputado, así como por "cualquier delito inferior necesariamente comprendido en el delito que se le imputa; o de cualquier grado inferior del delito que se le imputa; o de tentativa de cometer el delito que se le imputa".[19] La decisión de declarar culpable al acusado por el delito imputado o por un delito menor incluido en el primero depende de la evidencia presentada en el juicio, de que se puedan identificar en la prueba los elementos necesarios para concluir que se cometió la infracción y el vínculo del acusado con ese hecho.[20]

Para que se pueda hallar culpable a una persona por un delito menor incluido en el delito por el cual se le acusó, es necesario que los hechos expuestos en la acusación por el delito mayor contengan los elementos esenciales del delito menor. Si el delito mayor incluye todos los

---

[17] E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Ed. Forum, 1993, Vol. III, págs. 158 y 169. Véanse: Regla 36 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 36; Pueblo v. Seda, 82 D.P.R. 719, 727 (1961).

[18] Pueblo v. Meléndez Cartagena, 106 D.P.R. 338, 340-341 (1977).

[19] Regla 147 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 147.

[20] Pueblo v. Rivera Ortiz, 150 D.P.R. 457, 462-463 (2000).

elementos requeridos por la Ley en relación con el menor, el mayor incluye al menor. Por el contrario, el menor no está comprendido en el mayor si el menor requiere algún otro elemento indispensable que no es parte del delito mayor.[21] Para hacer la determinación, se analiza si no se puede cometer el delito imputado sin cometer también el menor incluido.[22]

### III

La Ley para la Prevención e Intervención con la Violencia Doméstica o Ley 54 se aprobó en 1989 para atender la situación del maltrato de pareja que sufrían miles de personas en Puerto Rico, en su mayoría mujeres, y que no encontraba remedio en los recursos legales existentes. Su propósito fue prevenir la violencia y proteger la vida y la seguridad de estas personas, y por eso se diseñó a partir de las experiencias de las agraviadas.[23] Para cumplir con dicho objetivo, la Ley 54 recogió de manera integrada diversas medidas. Éstas agilizan los procesos para obtener órdenes de protección contra los agresores, tipifican cinco delitos de maltrato contra la pareja; permiten el arresto inmediato, sin necesidad de orden, de la pareja

---

[21] Pueblo v. Oyola Rodríguez, 132 D.P.R. 1064, 1071 (1993); Pueblo v. Ramos López, 85 D.P.R. 576, 580 (1962).

[22] Pueblo v. Concepción Sánchez, 101 D.P.R. 17, 19 (1973).

[23] Y. Zayas, La Ley 54 y la protección de la familia puertorriqueña, Sexto Congreso Internacional sobre Derecho de Familia – Nuevas Tendencias del Derecho Familiar, 1990, págs. 2-9. Véase también Informe Conjunto del Sustitutivo a los P. del S. 90 y 470, 25 de junio de 1989 [Informe Conjunto], págs. 6-20.

maltratante; obligan a la Policía a brindar ayuda a las víctimas y preparar informes sobre los incidentes de violencia doméstica; proveen alternativas de rehabilitación para los ofensores y ordenan educar a la ciudadanía para prevenir esta conducta.[24]

Una de las innovaciones más importantes de la Ley 54 fue criminalizar de manera específica el abuso psicológico en las relaciones íntimas, pues éste suele pasar desapercibido tanto porque no deja marcas visibles como porque muchas veces queda subsumido en otros tipos de violencia.[25] Los estudios sobre violencia doméstica demuestran que la violencia emocional o psicológica es la más insidiosa de las agresiones contra la pareja, en parte porque muchas veces ni siquiera se reconoce como violencia, a pesar de que su efecto es devastador y persistente.[26]

---

[24] Exposición de Motivos, Ley 54, Leyes de Puerto Rico 1989, 11a Asamblea - 1ra Sesión Ordinaria, págs. 222-224; Art. 1.2, Ley 54, 8 L.P.R.A. sec. 601.

[25] E. Vicente, Beyond Law Reform: The Puerto Rican Experience in the Construction and Implementation of the Domestic Violence Act, 68 Rev. Jur. UPR 553, 585 y 591-592 (1999).

[26] A. Mullender, La violencia doméstica: una nueva visión de un viejo problema, Barcelona, Ed. Paidós, 2000, págs. 47-59. Véase también C. Ganzenmüller Roig y otros, La violencia doméstica: regulación legal y análisis sociológico y multidisciplinar, Barcelona, Ed. Bosch, 1999. Estos autores explican: "Es frecuente la existencia de comportamientos de maltrato psicológico que socialmente sean aceptados y entren dentro de los límites de la 'normalidad'. Algunos hombres no golpean físicamente a sus compañeras, pero las hacen víctimas cargándolas de reproches continuos y amenazas, lo cual las obliga a mantenerse en un continuo clima de angustia que perturba su equilibrio psicológico. Este tipo de violencia conduce sistemáticamente a la depresión y a veces al suicidio". Íd. págs. 44-45.

Asimismo, las investigaciones indican que los insultos y las intimidaciones suelen sentar las bases para que las mujeres se sientan subordinadas e indefensas y soporten luego ataques físicos y sexuales.[27]

Por eso, cuando se presentó el proyecto legislativo que culminó en la aprobación de la Ley 54, se expresó que la creación de los delitos de maltrato mediante amenaza y maltrato mediante restricción de la libertad de la pareja se justificaba principalmente porque "[l]a mayoría de los actos de violencia doméstica que degeneran en grave daño físico en la persona del cónyuge, muchas veces causándole la muerte, comienzan con una amenaza o se dan cuando la persona está bajo el dominio de otra".[28] Pero, más allá de ser indicadores de riesgo de violencia física y daño letal contra las víctimas, el acoso y las amenazas constituyen un elemento de persecución y desestabilización que requiere ser sancionado, aun cuando no se concrete el atentado anunciado.[29]

---

[27] R.M. Silva Bonilla y otras, Hay amores que matan: la violencia contra las mujeres en la vida conyugal, San Juan, Ed. Huracán, 1990, págs. 40-41. Las víctimas de violencia doméstica llegan a pensar que el abuso que sufren es por culpa suya. Véase San Vicente v. Policía de P.R., 142 D.P.R. 1, 8-23 (1996) (Opinión de conformidad de la jueza Naveira).

[28] Informe Conjunto, pág. 13.

[29] V. Garrido, Amores que matan: acoso y violencia contra las mujeres, Barcelona, Ed. Algar, 2001, págs. 44-50; Comisión para los Asuntos de la Mujer, Ponencia sobre el P. del S. 470 (Historial Legislativo de la Ley 54), 1 de junio de 1989, págs. 7-9 y 23-24.

El elemento de abuso psicológico está presente en los cinco delitos que tipifica la Ley 54. El artículo 3.1, que prescribe el maltrato contra la pareja de modo general, incluye la violencia psicológica, la intimidación y la persecución. Lo mismo ocurre con el artículo 3.2, que castiga las conductas incluidas en el artículo 3.1 cuando suceden en determinadas circunstancias agravantes. De hecho, una de las razones para crear los delitos de maltrato y maltrato agravado en los artículos 3.1 y 3.2 de la Ley 54, a pesar de que ya existían el de agresión y el de agresión agravada en el Código Penal, fue que estos últimos se referían sólo a lesiones a la integridad corporal, mientras que los propuestos en la legislación especial contemplaban el daño causado por violencia psicológica.[30] Por su parte, el artículo 3.3 sanciona el maltrato cuando se realiza mediante amenazas y el artículo 3.4 cuando se lleva a cabo restringiendo la libertad de la otra persona, ambas manifestaciones de abuso emocional. Asimismo, el artículo 3.5, que condena la agresión sexual conyugal, contiene en su enumeración de instancias de relaciones sexuales no consentidas las situaciones en que se emplean violencia psicológica, intimidación o amenazas.[31] Esto se debe a que los distintos tipos de abuso —el físico,

---

[30] Informe Conjunto, *supra*, pág. 11.

[31] Arts. 3.1-3.5, Ley 54, 8 L.P.R.A. secs. 631-635. El artículo 2.8 establece que la violación de una orden de protección será sancionada como delito grave de tercer grado en su mitad inferior, pero no se encuentra en el Subcapítulo de Conducta Delictiva de la Ley 54. 8 L.P.R.A. sec. 628.

el sexual y el psicológico- se encuentran intricados en los casos de violencia doméstica. De ahí la dificultad de clasificar los hechos de violencia de pareja bajo categorías penales definidas. Sin embargo, como explica la profesora Esther Vicente, al construir los delitos que sancionaría la Ley 54, por imperativo del principio de legalidad,[32] la conducta lesiva contra la pareja se tuvo que subdividir en varios delitos que establecieran de forma clara y específica qué se estaba prohibiendo.[33]

En este caso nos corresponde analizar el contenido y alcance de los artículos 3.1 y 3.3 de la Ley 54. El artículo 3.1 de la Ley 54 dispone:

> Toda persona que *empleare fuerza física o violencia psicológica, intimidación o persecución* en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, *para causarle daño físico a su persona, a los bienes apreciados por ésta*, excepto aquéllos que pertenecen privativamente al ofensor, *o a la persona de otro, o para causarle grave daño emocional*, incurrirá en delito grave de cuarto grado en su mitad superior. El tribunal podrá imponer la pena de restitución, además de la pena de reclusión establecida.[34]

Mientras, el artículo 3.3 de la Ley 54 establece:

> Toda persona que *amenazare* a su cónyuge, ex cónyuge, a la persona con quien cohabita o con quien haya cohabitado, o con quien sostiene o

---

[32] El principio de legalidad prohíbe instar acciones penales por hechos que no estén expresamente definidos como delitos. Art. 2, Código Penal de 2004, 33 L.P.R.A. sec. 4630.

[33] Vicente, *supra*, pág. 592.

[34] (Énfasis suplido.) Art. 3.1, Ley 54, 8 L.P.R.A. sec. 631.

haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, *con causarle daño determinado a su persona, a los bienes apreciados por ésta*, excepto aquéllos que pertenecen privativamente al ofensor, *o a la persona de otro*, incurrirá en delito grave de cuarto grado en su mitad superior. El tribunal podrá imponer la pena de restitución, además de la pena de reclusión establecida.[35]

Estos dos delitos comparten el mismo sujeto activo, toda persona, y el mismo sujeto pasivo: su cónyuge, ex cónyuge, persona con quien cohabita o cohabitó, persona con quien sostiene o sostuvo una relación consensual o persona con quien haya procreado hijos o hijas. También, el maltrato y el maltrato mediante amenaza son ambos delitos graves de cuarto grado y la Ley ordena imponer la pena correspondiente en su mitad superior en los dos casos.

¿Por qué estos dos delitos conllevan la misma pena? Como mencionamos anteriormente, el daño permanente y difícil de subsanar que produce el abuso psicológico, así como las implicaciones que tiene dentro de la relación de pareja como factor para la perpetuación del ciclo de maltrato, instan a equiparar el abuso físico con la amenaza de llevarlo a cabo. Además, ambas conductas representan abuso emocional. Así lo reconoció nuestra Legislatura cuando afirmó, en el Memorial Explicativo del proyecto que se convirtió en la Ley 54, que "[t]odos los delitos propuestos se han clasificado como graves, pues es importante que comuniquemos a los ofensores que su conducta es inaceptable y que no será tolerada" y que el maltrato

---

[35] (Énfasis suplido.) Art. 3.3, Ley 54, 8 L.P.R.A. sec. 633.

psicológico, incluido en el artículo 3.1, recoge el abuso emocional que "acompaña todo maltrato físico, pero en ocasiones se presenta solo y deja cicatrices tan severas como el físico".[36] Asimismo, cuando la Cámara de Representantes evaluó el proyecto de ley aprobado por el Senado, recomendó enmendarlo para que los artículos 3.1 y 3.3 fueran clasificados como menos graves y se pudieran referir a mediación antes de que se diera la vista de causa probable, pero las enmiendas fueron retiradas porque se reconoció que iban en contra del propósito de la medida de eliminar los patrones de conducta agresiva y de dejar claro que ningún tipo de violencia contra la pareja sería condonado.[37]

Esta valorización se ha mantenido. Tanto el artículo 3.1 como el 3.3 fueron enmendados en el 2004 para aumentar la pena de cárcel aplicable desde 1989 de una de 12 meses, que se podían reducir a 9 meses si mediaban circunstancias atenuantes y aumentar a 18 meses en caso de agravantes, a

---

[36] Memorial Explicativo, P. del S. 470 (P. de la C. 615) de 28 de abril de 1989 [Memorial Explicativo], págs. 7-8. *Véase también* Pueblo v. Lacroix Correa, 127 D.P.R. 557, 561-568 (1990) (Opinión disidente del juez Hernández Denton).

[37] Vicente, *supra*, págs. 571-573; Informe de la Comisión de lo Jurídico Penal sobre los Sustitutivos al P. del S. 90 y 470, Diario de Sesiones, Cámara de Representantes, 28 de junio de 1989, págs. 102-103; Memorial Explicativo, *supra*, págs. 1-2. Los delitos de agresión y amenazas en el Código Penal son menos graves. Arts. 121 y 188, Código Penal de Puerto Rico, 33 L.P.R.A. secs. 4749 y 4816. Sobre los factores que se consideraron para decidir que esta conducta fuera delito grave si se cometía contra la pareja, *véase* Comisión para Asuntos de la Mujer, *supra*, págs. 21-22.

la correspondiente a delitos graves de cuarto grado.[38] Los delitos graves de cuarto grado conllevan una pena de reclusión por término fijo no menor de 6 meses y 1 día ni mayor de 3 años, contados en años naturales.[39] En el 2005, los artículos 3.1 y 3.3 de la Ley 54 se enmendaron nuevamente para establecer que quienes realizaran la conducta tipificada incurrirían en delito grave de cuarto grado en su mitad superior; es decir, se les impondría una pena de entre 18 meses y un día como mínimo y 3 años como máximo.[40] Esto refleja que, cuando la Legislatura ha revisado estos delitos, ha decidido aumentar las penas aplicables, pero conservándolas iguales para ambas conductas.

La diferencia entre el artículo 3.1 y el 3.3 de la Ley 54 se encuentra en la conducta delictiva que tipifican. De entrada, debemos notar que ambos delitos proscriben el abuso psicológico. No obstante, el artículo 3.3 es más específico, pues se limita a castigar el maltrato psíquico que se realiza a través de amenazas, mientras que el 3.1 es más abarcador, pues prohíbe el abuso psicológico en general y, además, el abuso físico.

El delito de maltrato del artículo 3.1 tiene tres elementos: (1) que se emplee fuerza física, violencia

---

[38] Arts. 2 y 4, Ley Núm. 480-2004, 8 L.P.R.A. secs. 631 y 633.

[39] Art. 66(e), Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4694(e).

[40] Arts. 3 y 5, Ley Núm. 165-2005, 8 L.P.R.A. secs. 631 y 633.

psicológica, persecución o intimidación; (2) que esa conducta se lleve a cabo contra una de las parejas o ex parejas identificadas en la Ley y (3) que se haga con el propósito de causar algún daño físico a la persona, a sus bienes o a otra persona o para causarle grave daño emocional a la pareja o ex pareja.[41]

En cuanto al primer elemento, la violencia física no está definida en la Ley, pero este Tribunal ha interpretado que se da con cualquier agresión, independientemente de si existe un patrón de maltrato.[42] El artículo 3.1 tampoco exige que la fuerza física utilizada sea severa; cualquier grado de fuerza es suficiente para que se configure el delito si se emplea con la intención de causar algún daño.[43]

La Ley 54 sí delimita las demás conductas prohibidas por el artículo 3.1. La violencia psicológica se define como "un *patrón de conducta constante ejercitada en deshonra, descrédito o menosprecio al valor personal*, limitación irrazonable al acceso y manejo de los bienes

---

[41] Pueblo v. Ríos Alonso, 156 D.P.R. 428, 434-437 (2002).

[42] Pueblo v. Figueroa Santana, 154 D.P.R. 717, 726-731 (2002). Desde que se aprobó la Ley 54, surgió confusión sobre si la definición de violencia doméstica del artículo 1.3 se debía utilizar para analizar el artículo 3.1. La diferencia entre estas dos disposiciones se encuentra en que la primera habla de un patrón de conducta constante y la segunda no. Art. 1.3(p), Ley 54, 8 L.P.R.A. sec. 602(p). La intención de la Ley fue cubrir la mayor cantidad de agresiones posible, por lo que no contempló que se integrara el requisito de probar varios actos violentos para que se configurara el delito de maltrato. *Véanse* Vicente, *supra*, págs. 582-586; E.L. Chiesa Aponte, Derecho Penal, 71 Rev. Jur. U.P.R. 495, 495-499 (2002).

[43] Pueblo v. Roldán López, 158 D.P.R. 54 (2002).

comunes, *chantaje, vigilancia constante*, aislamiento, privación de acceso a alimentación o descanso adecuado, *amenazas de privar de la custodia de los hijos o hijas*, o destrucción de objetos apreciados por la persona, excepto aquellos que pertenecen privativamente al ofensor".[44] Esta ocurre, por ejemplo, cuando se verbalizan insultos, burlas o críticas de manera repetida.[45] La intimidación se da a través de "*toda acción o palabra que manifestada en forma recurrente* tenga el *efecto de ejercer una presión moral* sobre el ánimo de una persona, la que por temor a sufrir un daño físico o emocional en su persona, sus bienes o en la persona de otro, es obligada a llevar a cabo un acto contrario a su voluntad".[46] La persecución, según la Ley 54, significa "mantener a una persona bajo *vigilancia constante o frecuente* con su presencia en los lugares inmediatos o relativamente cercanos al hogar, residencia, escuela, trabajo o vehículo en el cual se encuentre la persona, para infundir temor o miedo en el ánimo de una persona prudente y razonable".[47] Asimismo, la Ley 54 define el grave daño emocional que forma parte del tercer elemento del artículo 3.1 como "cuando, como resultado de la violencia doméstica, haya evidencia de que la persona manifiesta *en forma*

---

[44] (Énfasis suplido.) Art. 1.3(q), Ley 54, 8 L.P.R.A. sec. 602(q).

[45] Informe Conjunto, *supra*, pág. 6.

[46] (Énfasis suplido.) Art. 1.3(g), Ley 54, 8 L.P.R.A. sec. 602(g).

[47] (Énfasis suplido.) Art. 1.3(j), Ley 54, 8 L.P.R.A. sec. 602(j).

*recurrente* una o varias de las características siguientes: miedo paralizador, sentimientos de desamparo o desesperanza, sentimientos de frustración y fracaso, sentimientos de inseguridad, desvalidez, autoestima debilitada u otra conducta similar, *cuando sea producto de actos u omisiones reiteradas*".[48]

En todas estas definiciones aplicables a la violencia psicológica y el daño emocional que sanciona el artículo 3.1 encontramos el elemento de recurrencia. Por el contrario, el delito de maltrato mediante amenaza del artículo 3.3 no requiere un patrón de conducta ni un efecto sobre el ánimo de la víctima.[49] En vista de ello y debido a que es difícil probar que ha habido un patrón constante de abuso psicológico o que se ha causado grave daño emocional, los incidentes de maltrato en que están presentes las amenazas y la intimidación se tramitan al amparo del artículo 3.3 y no del artículo 3.1.[50]

Los artículos 3.1 y 3.3 de la Ley 54 tipifican delitos distintos con la misma pena. Aunque tienen en común la persona que comete el delito y la víctima, así como el empleo de maltrato psicológico, el artículo 3.3 sólo exige que se haga una amenaza de causar un daño determinado. El artículo 3.1, además de ser más amplio en cuanto a los

---

[48] (Énfasis suplido.) Art. 1.3(f), Ley 54, 8 L.P.R.A. sec. 602(f).

[49] La palabra "amenaza" no se define en la Ley, por lo que se entiende que se utiliza con su acepción coloquial de dar a entender que se le quiere causar algún mal a alguien.

[50] Vicente, *supra*, pág. 587.

tipos de conducta que sanciona, requiere elementos que no están presentes en el delito de maltrato mediante amenaza: la recurrencia del abuso psicológico y el grave daño emocional que se le causa a la víctima. Entonces, el delito de maltrato del artículo 3.1 no puede ser considerado un delito menor incluido en el de maltrato mediante amenaza del artículo 3.3. Para esto, sería necesario que el artículo 3.3 incluyera todos los elementos del artículo 3.1 y no lo hace. Está claro que el delito que el Estado alega que es uno menor incluido requiere elementos que no forman parte del supuesto delito mayor. Asimismo, una persona puede cometer el delito de maltrato mediante amenaza contra su pareja sin incurrir en el delito de maltrato general de la Ley 54. Esto es, que no necesariamente se va a cometer el delito que se alega que es uno menor incluido cuando se comete el delito por el cual se acusó al señor Ayala García.

En este caso, la prueba presentada podría servir para probar un caso de maltrato bajo el artículo 3.1 de la Ley 54. Sin embargo, al acusado se le imputó haber violado el artículo 3.3 de la Ley y, en el ámbito criminal, la prueba no enmienda las alegaciones tácitamente.[51] La acusación, aunque aludió al temor que la víctima sentía ante las acciones de su ex pareja, no incluyó la alegación de maltrato psicológico recurrente, pues sólo mencionó un incidente. Además, originalmente, al señor Ayala García se le imputó haber incurrido en la conducta prohibida por el

---

[51] Chiesa Aponte, *op. cit.*, Vol. III, pág. 178.

artículo 3.1 en su modalidad agravada, según dispuesto por el artículo 3.2, pero no se encontró causa para acusar por dicho delito, sino sólo por el artículo 3.3.

Por todo ello, erró el Tribunal de Primera Instancia al emitir un fallo de culpabilidad contra el señor Ayala García por violación al artículo 3.1 de la Ley 54. El Tribunal de Apelaciones concluyó correctamente que no se justificaba la convicción bajo ese delito, que es uno distinto al imputado y no es uno menor incluido en éste. Sin embargo, el foro apelativo no terminó su análisis en este punto y tampoco puede hacerlo este Tribunal.

IV

El Tribunal de Apelaciones razonó que, como consecuencia de que se dictó sentencia por un delito distinto al imputado que no era uno menor incluido en éste, procedía la excarcelación del acusado. Para ello, se basó equivocadamente en la Regla 38(d) de Procedimiento Criminal. Ésta establece:

> El tribunal podrá permitir enmiendas a la acusación, a la denuncia o a un escrito de especificaciones en cualquier momento antes de la convicción o absolución del acusado, en caso de que hubiere incongruencia entre las alegaciones y la prueba. La incongruencia o desacuerdo entre las alegaciones y la prueba no será fundamento para la absolución del acusado; pero el tribunal, siempre que el acusado no se opusiere, deberá posponer el juicio si es de opinión que los derechos sustanciales del acusado se han perjudicado, para celebrarlo ante otro jurado o ante el mismo tribunal si el juicio no fuere por jurado, y según el tribunal determinare.
> *Si la incongruencia o desacuerdo es de tal naturaleza que la prueba estableciere un delito distinto del imputado, no incluido en éste*, o estableciere la comisión de un delito fuera de la

competencia del tribunal, se deberá disolver el jurado y se sobreseerá el proceso.[52]

El sobreseimiento de la acción penal que permite esta regla se refiere a casos, distintos al presente, en los que se haya imputado un delito y la prueba haya demostrado la comisión de otro no incluido en aquel por el cual se le acusó. La incongruencia entre la acusación y la prueba tiene que ser de tal grado que haga imposible una convicción por el delito originalmente imputado, en cuyo caso el acusado no habría estado expuesto realmente a una convicción bajo el delito imputado y no habría problema para iniciar un nuevo proceso penal por el delito que verdaderamente se cometió.[53]

En este caso, no aplica la Regla 38(d) porque no hay incongruencia alguna entre el pliego acusatorio y la prueba presentada. Al señor Ayala García se le acusó por el artículo 3.3 y en el juicio se presentó evidencia sobre su violación a esa disposición. El error que cometió el foro de instancia al hallarlo culpable por el artículo 3.1, que tiene elementos similares con el imputado pero no es uno menor incluido en éste, no puede resolverse sobreseyendo el proceso penal en su contra en virtud de dicha regla.

Además, para que proceda la absolución del acusado según la Regla 38(d) de Procedimiento Criminal, la incongruencia entre la acusación y la prueba tiene que ser "de tal orden que impida u obstaculice de modo

---

[52] (Énfasis suplido.) 34 L.P.R.A. Ap. II, R. 38(d).

[53] Chiesa Aponte, *op. cit.*, Vol. III, págs. 183-184.

significativo la preparación de la defensa o exponga al acusado a la posibilidad de ser enjuiciado dos veces por el mismo delito".[54] Aquí, el señor Ayala García fue debidamente notificado de los hechos que se le imputaban y tuvo oportunidad de defenderse de la acusación de maltrato mediante amenaza. El expediente demuestra que todo el proceso penal se tramitó correctamente de acuerdo con la acusación por el artículo 3.3 y fue únicamente al emitir el fallo de culpabilidad que se mencionó el artículo 3.1.

La comisión del delito imputado, el de maltrato mediante amenaza, se probó más allá de duda razonable.[55] La evidencia presentada y admitida, que fue estipulada por las

---

[54] Pueblo v. Santiago Cedeño, *supra*, pág. 667. *Véanse también:* Pueblo v. Flores Betancourt, 124 D.P.R. 867, 883-884 (1989); Pueblo v. Cancel Peraza, 106 D.P.R. 28, 31-32 (1977); Ríos Mora v. Tribunal Superior, 95 D.P.R. 117, 123-124 (1967).

[55] No nos convence el argumento que hace el señor Ayala García en la alternativa de que el foro de instancia, al declararlo culpable por el artículo 3.1, decidió absolverlo del cargo por maltrato mediante amenaza porque la prueba era insuficiente para que se determinara su culpabilidad por ese delito. *Véase* Alegato del Recurrido ante el Tribunal Supremo de 1 de septiembre de 2010, págs. 15-17. Si el tribunal primario lo halló culpable del artículo 3.1, que es más abarcador y requiere elementos adicionales a los que exige el artículo 3.3, no es posible que lo hubiera determinado porque entendió que el maltrato mediante amenaza no se cometió; menos aun cuando la prueba demostró que ocurrieron múltiples incidentes de maltrato psicológico y cuando el expediente sugiere que la mención del artículo 3.1 en el fallo de culpabilidad fue un error involuntario. Además, es la convicción por un delito menor incluido la que conlleva la absolución implícita por el delito mayor por el cual se acusa. Como hemos visto, en este caso, el delito de maltrato del artículo 3.1 por el cual se dictó el fallo de culpabilidad no es uno menor incluido en el de maltrato mediante amenaza por el cual se acusó al señor Ayala García, por lo que no habría una absolución implícita en cuanto al delito del artículo 3.3.

partes, era suficiente para una convicción de acuerdo con el delito por el cual se acusó al señor Ayala García. Claramente, al emitir el fallo de culpabilidad por el artículo 3.1, el tribunal de instancia cometió un error de derecho que puede ser revisado por los foros apelativos.[56] Cuando el acusado solicita que se revoque la sentencia dictada en su contra debido a un error de derecho del foro de instancia, y no por insuficiencia de la prueba, está impedido de alegar luego la protección constitucional contra la doble exposición.[57] Corregir la sentencia posteriormente no implica una segunda oportunidad para que el Ministerio Público pruebe su caso, sino la protección del interés de la sociedad en que se le imponga la pena justa a quien se le ha probado su culpabilidad en un proceso judicial.[58]

El foro apelativo erró al absolver al señor Ayala García en lugar de modificar la sentencia para que correspondiera al delito imputado y probado, con lo que permitió que quedara impune un acto de violencia doméstica. En ocasiones anteriores, hemos enfatizado la importancia de que los tribunales consideren con seriedad los crímenes de violencia doméstica para que la intervención judicial en

---

[56] *Véanse* <u>Pueblo v. Rodríguez Maldonado</u>, 2012 T.S.P.R. 76, pág. 16; <u>Pueblo v. Colón, Castillo</u>, 140 D.P.R. 564, 580-582 (1996).

[57] "Nadie será puesto en riesgo de ser castigado dos veces por el mismo delito". Art. II sec. 11, Const. P.R.

[58] <u>Pueblo v. Martínez Torres</u>, 126 D.P.R. 561, 567-573 (1990); Chiesa Aponte, *op. cit.*, Vol. II, págs. 395-408.

este tipo de casos sea efectiva y ayude a erradicar la violencia entre las parejas, y especialmente los patrones de conducta violenta contra las mujeres tan nocivos y tan arraigados en nuestra sociedad.[59]

Por lo tanto, procede modificar la Sentencia dictada por el Tribunal de Primera Instancia para que sustituya la designación del delito por el cual se halló culpable al señor Ayala García, de maltrato según el artículo 3.1 de la Ley 54 a maltrato mediante amenaza de acuerdo con el artículo 3.3 de la misma ley.[60] El tiempo de prisión que el señor Ayala García cumplió bajo la Sentencia revocada erróneamente por el Tribunal de Apelaciones se le deberá descontar del periodo de encarcelamiento que se le imponga al modificarse la Sentencia para que corresponda al delito imputado y probado.[61]

---

[59] *Véanse, por ejemplo*: Pueblo v. Rodríguez Velázquez, 152 D.P.R. 192, 204-205 (2000); Pueblo v. Rivera Morales, 133 D.P.R. 444, 469-487 (1993) (Voto de conformidad de la jueza Naveira); Pueblo v. Esmurria Rosario, 117 D.P.R. 884, 890-894 (1986) (Voto particular de la jueza Naveira). *Véase, en general*, M. Burton, Legal Responses to Domestic Violence, New York, Ed. Routledge-Cavendish (2008).

[60] Regla 213 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 213; Pueblo v. Candelario Couvertier, 100 D.P.R. 159 (1971). En caso de que, como sugieren las incongruencias en los documentos del foro de instancia, la alusión al artículo 3.1 al declarar culpable al acusado haya sido un error, también hubiese procedido corregir la sentencia para que la convicción correspondiera al artículo 3.3 imputado. Regla 185(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 185(b). Una persona no puede librarse de la pena que le corresponda cumplir por un delito cuya comisión haya sido probada por el hecho de que el tribunal se haya equivocado al dictar sentencia. González de Jesús v. Jefe Penitenciaría, 90 D.P.R. 31, 34-35 (1964).

[61] Regla 184 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 184.

V

Por los fundamentos antes expuestos, se revoca el dictamen del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que modifique la sentencia impuesta al señor Ayala García, de acuerdo con el artículo 3.3 de la Ley 54 y lo aquí resuelto.

Se dictará sentencia de conformidad.


Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
        Peticionario

                                              *Certiorari*

            v.
                                        CC-2009-795

    Abraham Ayala García
        Recurrido


                            *SENTENCIA*


    En San Juan, Puerto Rico, a 13 de julio de 2012.

        Por los fundamentos expuestos en la Opinión que
antecede, la cual se hace formar parte integrante de la
presente Sentencia, se revoca el dictamen del Tribunal de
Apelaciones y se devuelve el caso al Tribunal de Primera
Instancia para que modifique la sentencia impuesta al
señor Ayala García, de acuerdo con el artículo 3.3 de la
Ley 54 y lo aquí resuelto.

        Lo acordó y manda el Tribunal y certifica la
Secretaria del Tribunal Supremo. El Juez Presidente señor
Hernández Denton disiente sin opinión escrita. El Juez
Asociado señor Martínez Torres emitió una opinión
disidente a la cual se une el Juez Asociado señor Estrella
Martínez. El Juez Asociado señor Kolthoff Caraballo no
intervino.


                    Aida Ileana Oquendo Graulau
                   Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Peticionario

        v.

    Abraham Ayala García

     Recurrido

CC-2009-795

Opinión disidente del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES, a la cual se unió el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 13 de julio de 2012.

> No hay duda, de que quien quebrante las disposiciones de la Ley Núm. 54 merece recibir la debida sanción dispuesta por Ley, pero ello conforme a las Reglas impuestas para todos los ciudadanos en nuestro ordenamiento legal y constitucional. Alejarnos de esa norma esencial en nuestro sistema de derecho, nos colocaría precisamente en contra del ordenamiento que estamos llamados a defender.
>
> Sentencia del Tribunal de Apelaciones, pág. 15.

En la Opinión que hoy se emite este Tribunal encuentra culpable a una persona, por primera vez, de un delito por el cual el foro primario *lo absolvió*. Lo anterior es contrario a la cláusula constitucional que prohíbe la doble exposición por

el mismo delito. Art. II, Sec. 11 de la Constitución de Puerto Rico; Quinta y Decimocuarta Enmiendas a la Constitución de los Estados Unidos, L.P.R.A., Tomo I. Por los fundamentos que expreso a continuación, disiento vehementemente, pero con mucho respeto, de la decisión de este Foro.

I

Según se desprende de la exposición narrativa estipulada de la prueba, el 29 de abril de 2008 el Sr. Abraham Ayala García llegó a la casa de la Sra. Moraima Vázquez Cotto, y allí profirió palabras soeces mientras golpeaba la ventana de la cocina y la puerta. Estos fueron compañeros consensuales por seis años y procrearon dos hijas, aunque al momento de los hechos llevaban poco más de un año separados. El señor Ayala García reclamó que tenía derecho a relacionarse con sus hijas. La señora Vázquez Cotto indicó que no podía buscarlas hasta que solicitara los documentos relativos a las relaciones paterno filiales. Acto seguido, la señora Vázquez Cotto llamó a la Policía y obtuvo una orden de protección.

Posteriormente, el 12 de mayo de 2008, mientras la señora Vázquez Cotto compartía con su pareja actual y sus dos hijas en el balcón de su residencia, el señor Ayala García llegó y estacionó a toda prisa el vehículo en que se encontraba. Luego de que se bajó del vehículo manifestó que "aquí no va haber 'break' pa' nadie, rompieron el cristal de la guagua de mi 'mai' y yo sé que fueron ustedes". Al

marcharse la señaló y le dijo, "a ti te voy a joder donde quiera que te coja". La señora Vázquez Cotto manifestó que inmediatamente llamó a la Policía para notificar lo sucedido, ya que sintió temor por su vida, no solo por ese incidente, sino también por los episodios previos por los cuales había obtenido tres órdenes de protección. Declaró, además, que el señor Ayala García vivía cerca de su residencia, pero que durante las tres semanas que le tomó a la Policía arrestarlo, luego de la celebración de la vista de causa probable para arresto, este no la buscó ni fue a su casa.

El mismo día, se presentaron dos denuncias contra el señor Ayala García. En una se le imputó violación al Art. 3.2 de la Ley Núm. 54 de 15 de agosto de 1989, conocida como Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, 8 L.P.R.A. sec.632. En la segunda, se imputó violación al Art. 3.3 de la Ley Núm. 54, íd., 8 L.P.R.A. sec. 633. No obstante, en la vista preliminar, solo se encontró causa para acusar por el Art. 3.3 de la Ley Núm. 54, íd. Es decir, **no se encontró causa** para acusar por el Art. 3.2 de la Ley Núm. 54, <u>supra</u>.

El 11 de agosto de 2008, luego de celebrarse el juicio en su fondo, el Tribunal de Primera Instancia resolvió que, conforme a la prueba presentada, se configuró el delito de maltrato, según tipificado por el **Art. 3.1 de la Ley Núm. 54**, <u>supra</u>, 3 L.P.R.A. sec. 361. Consecuentemente, sentenció

al señor Ayala García a cumplir una pena de reclusión de tres años.

El señor Ayala García apeló la decisión del tribunal sentenciador bajo el fundamento de que dicho foro lo había hallado culpable por un delito distinto al imputado en la acusación, a pesar de no tratarse de un delito menor incluido. El Tribunal de Apelaciones acogió su planteamiento y revocó la sentencia dictada por entenderla contraria a derecho. Además, ordenó la excarcelación del señor Ayala García.

Inconforme, el Procurador General acude ante este Tribunal. Señala que el Tribunal de Apelaciones erró al absolver al señor Ayala García, a pesar de que su función revisora a tenor con lo dispuesto en la Regla 213 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, exigía que **modificara** la sentencia apelada y dispusiera una sentencia por el delito de maltrato mediante amenaza, que fue el imputado y probado más allá de duda razonable. Este Tribunal expidió el auto de certiorari y hoy emite la decisión que motiva esta Opinión disidente.

II

A.   En nuestro ordenamiento jurídico, la acción penal se inicia con la determinación de causa probable para arresto o citación del imputado, según se regula en la Regla 6 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Pueblo v. Rivera Martell, 173 D.P.R. 601, 608 (2008). Desde que ello ocurre, "el tribunal adquiere jurisdicción sobre la persona

del imputado y se considera que éste queda sujeto a responder por la comisión del delito" que se le imputa. Íd. Véase, además, Pueblo v. Irizarry, 160 D.P.R. 544, 555 (2003).

Si lo que se imputa es un delito grave, luego de que se determine causa para arrestar al amparo de la Regla 6 de Procedimiento Criminal, supra, procede celebrar una vista para determinar si existe causa para celebrar un juicio. Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

En esencia, el propósito de la vista al amparo de la Regla 23, íd., "es evitar que una persona sea sometida injustificadamente a los rigores de un proceso penal. Ello se logra mediante la exigencia de que el Estado presente alguna prueba sobre los elementos constitutivos del delito y sobre la conexión del imputado con su comisión". Pueblo v. Fernández Rodríguez, Op. de 9 de diciembre de 2011, 2011 T.S.P.R. 188, pág. 31, 2011 J.T.S. 193, pág. 776, 183 D.P.R. __, __ (2011. Véase, además, Pueblo v. Rivera Vázquez, 177 D.P.R. 868, 875 (2010).

De igual forma, hemos mencionado que "si luego de evaluar la prueba desfilada el juez se convence de que existe causa probable para acusar, debe autorizar que se presente la acusación en contra del imputado. De lo contrario, lo debe exonerar y ponerlo en libertad si estaba detenido". Pueblo v. Rivera Vázquez, supra, pág.875. Véanse, además, Pueblo v. Ríos Alonso, 149 D.P.R. 761, 766-

67 (1999); Pueblo v. Rodríguez Aponte, 116 D.P.R. 653, 663 (1985).

Dicho de otro modo, la determinación de no causa sobre un delito en la etapa de vista preliminar, impide que el Ministerio Público presente la acusación correspondiente. Pueblo v. Rivera Vázquez, supra, pág.875. Ahora bien, adviértase que en la vista preliminar el tribunal tiene autoridad para encontrar causa "por el delito que la prueba sustente y no necesariamente por el imputado". Pueblo v. APS Healthcare of P.R., 175 D.P.R. 368, 396 (2009). Lo anterior incluye encontrar causa por un delito que sea menor e incluido en el que se imputó.

B.   En ocasiones anteriores hemos estudiado la doctrina del delito menor incluido. En particular, hemos expresado que para aplicar esta doctrina:

> el delito menor debe estar comprendido en el mayor por el cual se le acusa y que los hechos expuestos para describir la comisión del delito mayor deben contener las alegaciones que son esenciales para constituir una imputación por el menor. Si el delito mayor incluye todos los elementos de hecho y los requeridos por la ley en relación con el menor, el mayor incluye al menor; pero si el delito menor requiere otro elemento indispensable que no es parte del delito mayor entonces el menor no está comprendido en el mayor. La prueba para determinar si un delito está incluido en otro es determinar si no se puede cometer el primer delito sin que necesariamente se cometa el segundo.
>
> Pueblo v. Oyola Rodríguez, 132 D.P.R. 1064, 1071 (1993), citando a Pueblo v. Concepción Sánchez, 101 DPR 17, 19 (1973). Véase, además, Pueblo v. Ramos López, 85 DPR 576, 580 (1962).

El Art. 3.1 de la Ley Núm. 54, supra, indica:

§ 631. **Maltrato**

Toda persona que empleare fuerza física o violencia psicológica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, para causarle daño físico a su persona, a los bienes apreciados por ésta, excepto aquéllos que pertenecen privativamente al ofensor, o a la persona de otro o para causarle grave daño emocional, incurrirá en delito grave de cuarto grado en su mitad superior.

El tribunal podrá imponer la pena de restitución, además de la pena de reclusión establecida.

Por su parte, el Art. 3.2 de la Ley Núm. 54, _supra_, define el maltrato agravado:

## § 632. Maltrato agravado

Se impondrá pena correspondiente a delito grave de tercer grado en su mitad inferior cuando en la persona del cónyuge, ex cónyuge o de la persona con quien se cohabita o se haya cohabitado, o con quien se sostiene o haya sostenido una relación consensual, o con quien se haya procreado un hijo o hija, si se incurriere en maltrato según tipificado en este capítulo, mediando una o más de las circunstancias siguientes:

(a) Se penetrare en la morada de la persona o en el lugar donde esté albergada y se cometiere allí maltrato, en el caso de cónyuges o cohabitantes cuando éstos estuvieren separados o mediare una orden de protección ordenando el desalojo de la residencia a una de las partes; o
(b) cuando se infiriere grave daño corporal a la persona; o
(c) cuando se cometiere con arma mortífera en circunstancias que no revistiesen la intención de matar o mutilar; o
(d) cuando se cometiere en la presencia de menores de edad; o
(e) cuando se cometiere luego de mediar una orden de protección o resolución contra la persona acusada expedida en auxilio de la víctima del maltrato; o
(f) se indujere, incitare u obligare a la persona a drogarse con sustancias controladas, o

cualquier otra sustancia o medio que altere la voluntad de la persona o a intoxicarse con bebidas embriagantes;

(g) cuando se cometiere y simultáneamente se incurriere en maltrato de un menor según definido en las secs. 444 a 450m de este título, o

(h) si a la víctima se le obliga o induce mediante maltrato, violencia física o sicológica a participar o involucrarse en una relación sexual no deseada con terceras personas.

(i) Cuando se cometiere contra una mujer embarazada.

(j) Cuando se cometiere contra una persona menor de dieciséis (16) años y la persona agresora sea de dieciocho (18) años o más.

El tribunal podrá imponer la pena de restitución, además de la pena de reclusión establecida.

Un análisis de los delitos antes citados revela, sin ambages, que el Art. 3.1 de la Ley Núm. 54, _supra_, es uno menor incluido en el Art. 3.2, _supra_. En esencia, el Art. 3.2, _íd._, incluye la conducta que tipifica el Art. 3.1, _supra_, además de unas situaciones específicas, que de configurarse, agravan la pena de cuarto grado en su intervalo superior, a la correspondiente de tercer grado en su mitad inferior.

C. En el caso que nos ocupa, se presentaron denuncias contra el señor Ayala García por los Art. 3.2 y 3.3 de la Ley Núm. 54, _supra_. Sin embargo, solo se encontró causa para acusar **por el Art. 3.3 y no por el Art. 3.2**. Ello impidió que el Ministerio Público presentara acusación por este último delito, a saber, maltrato agravado. Por esa razón, era improcedente que el foro primario encontrara al acusado culpable del Art. 3.1 de la Ley Núm. 54, _supra_, que tipifica el maltrato.

Es decir, si el Ministerio Público no recibió autorización para presentar una acusación por el delito establecido en el **Art. 3.2** de la Ley Núm. 54, supra, mucho menos el Tribunal de Primera Instancia podía encontrarlo culpable por el delito menor incluido estatuido en el Art. 3.1.

Por otro lado, es correcta la conclusión a la que arriban el Tribunal de Apelaciones y este Tribunal de que el delito estatuido en el **Art. 3.1** de la Ley Núm. 54, supra, no es uno menor incluido del **Art. 3.3** de esa misma ley, supra. El Art. 3.3 de la Ley Núm. 54, supra, dispone lo siguiente:

> **§ 633 Maltrato mediante amenaza**
>
> Toda persona que amenazare a su cónyuge, ex cónyuge, a la persona con quien cohabita o con quien haya cohabitado o con quien sostiene o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, con causarle daño determinado a su persona, a los bienes apreciados por ésta, excepto aquellos que pertenecen privativamente al ofensor, o a la persona de otro, incurrirá en delito grave de cuarto grado en su mitad superior.
>
> El tribunal podrá imponer la pena de restitución, además de la pena de reclusión establecida.

Como indica la Opinión del Tribunal en las págs. 17-22, efectivamente el Art. 3.1 contiene elementos que no se configuran el Art. 3.3 y viceversa. El Art. 3.1 castiga el uso de la fuerza física, la violencia psicológica, la intimidación o la persecución para causarle daño a la víctima. En cambio, el Art. 3.3 penaliza al que amenaza con causarle daño a la víctima. Así pues, como en el proceso

penal la prueba no enmienda las alegaciones, fue totalmente desacertado que el Tribunal de Primera Instancia encontrara culpable al señor Ayala García de infringir el **Art. 3.1** de la Ley Núm. 54, supra. Regla 38(d) de Procedimiento Criminal, 34 L.P.R.A. Ap. II; E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Ed. Forum, 1991, Vol. 3, Sec. 24.3, pág. 123.

III

A. La protección contra la doble exposición, de rango constitucional, cobija a todo imputado de delito en la medida en que se le garantiza no ser "puesto en riesgo de ser castigado dos veces por el mismo delito". Art. II, Sec. 11 de la Constitución de Puerto Rico, L.P.R.A., Tomo I. Igual dispone la Enmienda Quinta de la Constitución de Estados Unidos al establecer que "nadie podrá ser sometido por la misma ofensa dos veces a un juicio...".(Traducción nuestra.)[62] En Benton v. Maryland, 395 U.S. 784 (1969), el Tribunal Supremo federal resolvió que la cláusula constitucional aludida aplicaba a los estados por conducto de la cláusula del debido proceso de ley contenida en la Enmienda Decimocuarta de esa misma Constitución.[63]

---

[62] El texto original en inglés es el siguiente: "no person shall be subject for the same offence to be twice put in jeopardy of life or limb."

[63] No hay controversia de que la garantía del debido proceso de ley de la Quinta Enmienda a la Constitución federal aplica a Puerto Rico. Rodríguez v. Popular Democratic Party, 457 U.S. 1, 7 (1982); Balzac v. Porto Rico, 258 U.S. 298, 312-313 (1922); Downes v. Bidwell, 182 U.S. 244, 283-284 (1901). Sin embargo, no se ha decidido si lo hace directamente o incorporada a través de la Enmienda Decimocuarta. Rodríguez v. Popular Democratic Party, supra; Examining Board v. Flores de Otero, 426 U.S. 572, 600-601 (1976); Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 668-669 (1974).

Dicha garantía opera:

(i) contra ulterior exposición tras absolución por la misma ofensa;

(ii) contra ulterior exposición tras convicción por la misma ofensa;

(iii) contra ulterior exposición tras exposición anterior por la misma ofensa (tras haber comenzado el juicio, que no culminó ni en absolución ni convicción);

(iv) contra castigos múltiples por la misma ofensa.

E. L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Ed. Forum, 1991, Vol. 2, Sec. 16.1, pág. 364.

Véanse, además, Pueblo v. Rivera Cintrón, Op. de 29 de abril de 2012, 2012 T.S.P.R. 75, 2012 J.T.S. 88, 185 D.P.R. __ (2012); Pueblo v. Martínez Torres, 126 D.P.R. 561, 568-69 (1990).

Es conocido por todos que la interpretación que haga el Tribunal Supremo federal sobre cierta cláusula constitucional constituye el mínimo que los estados están obligados a garantizar. Pueblo v. Díaz, Bonano, 176 D.P.R. 601, 621 (2009). Claro está, en circunstancias apropiadas, "en Puerto Rico podemos ser más amplios y abarcadores que el Tribunal Supremo de los Estados Unidos al interpretar una cláusula homóloga de la Constitución federal". Íd. Véase, además, H.M.C.A. (P.R.), Inc., etc. v. Contralor, 133 D.P.R. 945, 974-975 (1993). Sin embargo, en el caso que nos ocupa, no se trata de ofrecer una factura más ancha; **se trata de cumplir con la normativa clara** que sobre el particular el Tribunal Supremo federal ha pautado. Veamos.

B. Como manifestamos anteriormente, la cláusula constitucional que protege contra la doble exposición se manifiesta en cuatro dimensiones. Sin embargo, concentramos nuestro análisis en la protección contra ulterior exposición tras absolución por la misma ofensa, ya que es la que aplica a la controversia ante nos.

Una de las normas más fundamentales en la historia de la cláusula que protege contra la doble exposición es que una decisión de absolución no puede ser revisada, como error u otra forma, sin exponer **dos veces** a un acusado al riesgo de ser convicto. United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1977); United States v. Ball, 163 U.S. 662, 671 (1896). Cónsono con lo anterior, la jurisprudencia del Tribunal Supremo de los Estados Unidos ha establecido que luego de que una persona es absuelta a nivel de primera instancia no procede una apelación por parte del Ministerio Público. Kepner v. United States, 195 U.S. 100, 130 (1904), reiterado en Green v. United States, 355 U.S. 184, 224 (1957). Para ello no importa lo errónea que sea la sentencia dictada por el foro primario. Sanabria v. United States, 437 U.S. 54, 68-69 (1978). Véanse, además, United States v. Martin Linen Supply Co., supra, pág. 571; Fong Foo v. United States, 369 U.S. 141 (1962); Green v. United States, supra, pág. 188; United States v. Ball, supra, pág. 671.

Adviértase que una absolución, a diferencia de una convicción, termina la exposición para fines de la cláusula

constitucional que nos ocupa. Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 308 (1984). Consecuentemente, atar al acusado, que ya ha sido declarado absuelto, a un procedimiento posterior de determinación de hechos dirigido a declararlo culpable o inocente viola la cláusula constitucional que prohíbe la doble exposición. Smalis v. Pennsylvania, 476 U.S. 140, 145 (1986). Véase, además, Arizona v. Rumsey, 467 U.S. 203, 211-212 (1984).

De igual forma, la cláusula contra la doble exposición protege por igual toda determinación de absolución, ya esté contenida en un veredicto emitido por un jurado o en un fallo emitido por un juez. Smith v. Massachusetts, 543 U.S. 462, 466-467 (2005). Véanse, además, Richardson v. United States, 468 U.S. 317, 325, esc. 5, (1984); Sanabria v. United States, supra, pág. 64; United States v. Martin Linen Supply Co., supra, pág. 573; United States v. Sisson, 399 U.S. 267, 290 (1970). La única excepción a la norma anteriormente esbozada se configura cuando el tribunal concede una moción de absolución perentoria, luego de que un jurado emite un veredicto de culpabilidad. Smith v. Massachusetts, supra. Véanse, además, Regla 135 de Procedimiento Criminal, 32 L.P.R.A. Ap. II; Pueblo v. Colón Burgos, 140 D.P.R. 564 (1996). En ese caso se permite recurrir al foro apelativo porque de revocarse la determinación de absolución, solo procedería reinstalar el veredicto que el jurado emitió. Íd. Se protege así la decisión de los ciudadanos que compusieron el jurado.

Ahora bien, en el caso presente, resulta neurálgico definir lo que significa una **absolución** al amparo de la cláusula constitucional que protege contra la doble exposición. Sobre el particular, se ha expresado que es necesario cuestionarse si la determinación que hizo el foro primario (o el jurado) es una absolución, aunque se caracterice de otra forma. United States v. Wilson, 420 U.S. 332, 336 (1975). Es decir, se debe precisar si la determinación del juez, o del jurado, "como quiera que sea rotulada, representa una determinación, **correcta o no**, de todos o algunos de los elementos del delito imputado". United States v. Martin Linen Supply Co., supra, pág. 571.[64] (Traducción y énfasis nuestro.)

En ocasiones, puede suceder que se emita un fallo o veredicto de culpabilidad por un delito distinto al imputado en el pliego acusatorio, lo que constituye una **absolución implícita.** En este aspecto, el caso principal es Green v. United States, supra. Allí, se presentó acusación contra el señor Green por asesinato en primer grado. En las instrucciones al jurado, se indicó que el señor Green podía ser declarado culpable por asesinato en primer grado o en segundo grado. Luego de la deliberación, el jurado emitió un veredicto en que encontró al señor Green culpable de asesinato en segundo grado. Sin embargo, **el veredicto guardó silencio en cuanto al cargo de asesinato en primer**

---

[64] La cita en inglés es la siguiente: "we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged".

**grado.** Luego de que el tribunal aceptó el veredicto, sentenció al señor Green por asesinato en segundo grado.

Posteriormente, el Tribunal de Apelaciones de los Estados Unidos para el Distrito de Columbia revocó y devolvió el caso para que se celebrara un juicio nuevo. En el segundo juicio, el señor Green fue acusado de nuevo por asesinato en primer grado. Se encontró culpable por ese delito, a pesar de que adujo la defensa de doble exposición. Aunque hubo disidencia, el Tribunal de Apelaciones para el Distrito de Columbia confirmó la convicción por asesinato en primer grado. Así las cosas, el Tribunal Supremo de los Estados Unidos expidió el recurso y revocó la decisión del Tribunal de Apelaciones. En esencia, resolvió que no procedía la convicción por asesinato en primer grado porque hubo una absolución implícita por ese delito en el primer proceso que se celebró.

Por su pertinencia, citamos extensamente lo expuesto por el Tribunal Supremo federal, en Green v. United States, supra, págs. 191-192:

> [E]l resultado en este caso no tiene por qué sustentarse únicamente en el supuesto, que consideramos legítimo, de que el jurado, por una razón u otra, absolvió al señor Green de asesinato en primer grado. Aquí, el jurado fue despachado sin expresar un veredicto expreso en ese cargo [asesinato en primer grado] y sin el consentimiento del señor Green. Sin embargo, al jurado se le dio oportunidad plena de emitir un veredicto y no hay circunstancias extraordinarias que demuestren que se le impidió hacerlo. Por lo tanto, parece claro, en virtud de los principios establecidos de exposición previa, que la exposición de Green por el asesinato en primer grado llegó a su fin cuando el jurado fue despachado, por lo que no podía ser juzgado por

> ese delito nuevamente. <u>Wade v. Hunter</u>, 336 U.S.
> 684 (1949). En resumen, creemos que este caso no
> puede ser tratado de manera diferente, a efectos
> de exposición previa, de un caso en que el jurado
> emite un veredicto que expresamente indica:
> 'Encontramos al acusado no culpable de asesinato
> en primer grado, pero culpable de asesinato en el
> de segundo grado'. (Traducción nuestra.) [65]

Incluso, el Tribunal Supremo federal **rechazó** el argumento de que un acusado renuncia al planteamiento de doble exposición en cuanto a **un delito**, si apela la sentencia que emitió el foro primario en relación a **otro delito** por los mismos hechos. La contención del Estado era que un acusado debía estar dispuesto a ceder su protección constitucional en contra de la doble exposición **por un delito** si apelaba exitosamente la convicción errónea **de otro delito** por el cual había sido condenado. <u>Íd</u>., pág. 193. Al rechazar esa postura, ese Foro expresó:

> La ley no debe, y en nuestro criterio no coloca
> al acusado en tan increíble dilema. Condicionar
> la apelación **de un delito** a una renuncia
> coaccionada de una alegación de exposición previa
> en cuanto a **otro delito**, equivale a una

---

[65] La cita en inglés es la siguiente: "the result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. For here, the jury was dismissed without returning any express verdict on that charge and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense. <u>Wade v. Hunter</u>, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974. In brief, we believe this case can be treated no differently, for purposes of former jeopardy, than if the jury had returned a verdict which expressly read: 'We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree'".

confiscación, en **conflicto evidente** con la prohibición constitucional en contra de la doble exposición.

Íd., págs. 193-194. (Traducción y énfasis nuestro.)[66]

Lo resuelto en Green v. United States, íd., significa que en algunas circunstancias la convicción por un delito implica, para propósitos de la cláusula que prohíbe la doble exposición, la absolución implícita de otro. W. R. LaFave, J. Israel y otros, Criminal Procedure, 3 ed., Thomson West, 2007, Vol. 6, sec. 25.4(d), pág. 653.

La jurisprudencia reciente emitida por el Tribunal Supremo federal ha reiterado lo resuelto en Green v. United States, supra. Véase, Blueford v. Arkansas, __ S. Ct. __, 2012 WL 1868066, 566 U.S. __ (2012). En Blueford v. Arkansas, íd., decidido el 24 de mayo de 2012, el Tribunal Supremo de los Estados Unidos resolvió que una determinación **preliminar** de absolución hecha por un jurado adolece de finalidad para fines de la cláusula constitucional que protege contra la doble exposición. Ello, se debió a que ese caso, la determinación de absolución que informó el jurado al tribunal **no fue una decisión final sino interlocutoria**, pues el jurado siguió deliberando y al final no se pudo llegar a un veredicto. Íd. Sin embargo, para fines de la controversia que nos ocupa, el Tribunal Supremo federal citó nuevamente como

---

[66] La cita en inglés es la siguiente: "the law should not, and in our judgment does not, place the defendant in such an incredible dilemma. Conditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy".

autoridad lo resuelto en Green v. United States, supra, lo que conlleva a concluir que ese precedente sigue vigente con toda su fuerza.[67]

Hace más de cincuenta años este Tribunal reconoció la norma que se pautó en Green v. United States, íd. Específicamente, lo hicimos en Pueblo v. Pérez Martínez, 84 D.P.R. 181, 183 (1961). Allí, se produjo un veredicto de culpabilidad por asesinato en **segundo grado** contra el Sr. Osvaldo Pérez Martínez, aunque el pliego acusatorio imputaba asesinato en primer grado. En apelación, revocamos ese primer veredicto de culpabilidad por una instrucción errónea trasmitida al jurado. Pueblo v. Pérez Martínez, supra, pág. 183, esc. 1. En el nuevo juicio, se encontró culpable al señor Pérez Martínez otra vez por asesinato en **segundo grado**. Así las cosas, distinguimos los hechos que teníamos ante nuestra consideración de los que tuvo el Tribunal Supremo federal en Green v. United States, supra. En particular, señalamos:

> En el presente caso, sin embargo, el veredicto rendido en el primer juicio y el rendido en el nuevo juicio fue el mismo: culpable de asesinato en segundo grado. El primer veredicto, habiendo sido anulado a instancias del acusado, no constituye una exposición anterior. El acusado

---

[67] El 11 de junio de 2012 el Tribunal Supremo de Estados Unidos expidió certiorari en el caso Evans v. Michigan, Núm. 11-1327. El caso presenta la controversia de si la cláusula constitucional que prohíbe la doble exposición permite un juicio nuevo por un delito cuando en el juicio anterior el juez de primera instancia absolvió erróneamente por entender que ese delito requería un elemento adicional. En ese caso, el juez del foro primario concedió una moción de absolución perentoria a mitad de juicio, por entender erróneamente que el Ministerio Público no presentó prueba sobre un elemento del delito. Inconforme, el Ministerio Público volvió a presentar otro proceso por el mismo delito. El Tribunal Supremo de Michigan resolvió que no se configuró una violación a la cláusula constitucional que prohíbe la doble exposición porque la absolución se debió a un error de derecho.

podía ser legalmente castigado por el delito de asesinato en segundo grado en el segundo juicio, sin que ello violara su derecho constitucional... [a] no ser puesto en riesgo de ser castigado dos veces por el mismo delito.

Pueblo v. Pérez Martínez, supra, pág. 184.

Distinto habría sido si en el segundo juicio se hubiera encontrado culpable al señor Pérez Martínez de asesinato en primer grado. En ese supuesto, tal como ocurrió en Green v, U.S., supra, se hubiese quebrantado la cláusula contra la doble exposición porque en cuanto al delito de asesinato en primer grado **hubo una absolución implícita.**

C.    En el caso que nos ocupa, el Procurador General nos pide que determinemos que el Art. 3.1 de la Ley Núm. 54, supra, es un delito menor incluido en el Art. 3.3 de esa misma ley, supra. En cuanto a ese punto, ya determinamos que es inmeritorio lo que se nos solicita. En la alternativa, nos insta a **modificar** el fallo que emitió el foro primario para que declaremos culpable al señor Ayala García de un delito que ningún otro tribunal inferior lo encontró culpable, a saber, el Art. 3.3 de la Ley Núm. 54, íd.

En el día de hoy, la Opinión del Tribunal accede a "modificar" la sentencia y encontrar culpable al acusado de quebrantar el Art. 3.3, íd., porque no le "convence el argumento que hace el señor Ayala García en la alternativa de que el foro de instancia, al declararlo culpable por el

artículo 3.1, decidió absolverlo del cargo por maltrato mediante amenaza porque la prueba era insuficiente para que se determinara su culpabilidad por ese delito". Opinión del Tribunal, pág. 24, esc. 55. Acto seguido, la Opinión del Tribunal, pág. 24, esc. 55, se embarca en un análisis psíquico de lo que alegadamente razonó la Hon. María I. Cartagena Colón al momento de emitir su fallo. En específico, se expresa:

> [s]i el tribunal primario lo halló culpable del artículo 3.1, que es más abarcador y requiere elementos adicionales a los que exige el artículo 3.3, no es posible que lo hubiera determinado porque entendió que el maltrato mediante amenaza no se cometió, menos aun cuando la prueba demostró que ocurrieron múltiples incidentes de maltrato psicológico y cuando el expediente sugiere que la mención del artículo 3.1 en el fallo de culpabilidad fue un error involuntario.

Sin embargo, un análisis detenido, pausado y concienzudo de la sentencia lacónica que emitió el foro primario y de la minuta de lo que ocurrió en ese día no permite, bajo ningún supuesto, arribar a la conclusión que llega hoy la Opinión de este Foro. Lo único que se desprende de esos documentos es que se encontró culpable al señor Ayala García de infracción del **Art. 3.1** de la Ley Núm. 54, supra y no del **Art. 3.3** de esa misma ley. De hecho, el Procurador General en su comparecencia no controvierte el hecho de que el señor Ayala García fue hallado culpable de infringir el **Art. 3.1** de la Ley Núm. 54, supra y no el **Art. 3.3** de esa misma ley. Así pues, en este caso **_no_** cabe concluir que "el expediente sugiere que

la mención del artículo 3.1 en el fallo de culpabilidad fue un error involuntario". <u>Opinión del Tribunal</u>, pág. 24, n. 55.

Además, en el caso que nos ocupa, la Juez Cartagena Colón no explicó las razones por las cuales encontró culpable al señor Ayala García de quebrantar el Art. 3.1 y no el Art. 3.3. Así pues, solo contamos con la exposición narrativa estipulada de la prueba. En ella, se vierte <u>lo que declararon</u> las testigos Vázquez Cotto y Vanessa González. Sin embargo, eso no nos dice qué fue lo que el foro primario <u>creyó</u>. Ante ese cuadro, es totalmente impropio concluir que nos enfrentamos a un error puro de derecho, y mucho menos que "[l]a comisión del delito imputado, el de maltrato mediante amenaza, se probó más allá de duda razonable. <u>Opinión del Tribunal</u>, pág. 24.

Ahora bien, lo que sí demuestran la orden de encarcelación y la sentencia del foro primario es que el proceso <u>finalizó</u> para fines de la cláusula constitucional que prohíbe la doble exposición. <u>Blueford v. Arkansas</u>, <u>supra</u>. Dicho de otro modo, con la sentencia que emitió el tribunal primario, <u>terminó la exposición</u> del señor Ayala García por el Art. 3.3 de la Ley Núm. 54, <u>supra</u>. Eso constituye una absolución implícita. <u>Blueford v. Arkansas</u>, <u>supra</u>; <u>Smith v. Massachusetts</u>, <u>supra</u>; <u>Green v. United States</u>, <u>supra</u>.

Adviértase que cuando el Tribunal de Primera Instancia tuvo el caso sometido ante su consideración, tenía a su

disposición la opción de encontrar al señor Ayala García culpable por el delito que se le acusó y **no lo hizo**. Entonces, si el **proceso culminó** -hubo una orden de encarcelación- y el Tribunal de Primera Instancia _**no**_ lo encontró culpable del Art. 3.3 de la Ley Núm. 54, supra, la única conclusión lógica es que lo absolvió implícitamente. Si el foro primario no absolvió al señor Ayala García del Art. 3.3, supra, entonces, ¿qué hizo? Formular cualquier otro razonamiento implica resolver que la exposición del señor Ayala García en cuanto al Art. 3.3, íd., quedó en un **limbo jurídico** porque no fue declarado culpable ni fue absuelto expresamente. Y peor aún, que esa exposición por el Art. 3.3, supra, se encuentra en un **suspenso jurídico**, del cual la Opinión del Tribunal guarda silencio, que nos permite declararlo culpable de ese delito por primera vez, con solo una narración estipulada de la prueba, que no expresa si el Tribunal de Primera Instancia creyó todo o parte de lo que en ella se recoge.

Sobre el particular, ya el Tribunal Supremo de los Estados Unidos resolvió en Green v. United States, supra, págs. 191-192, que es innecesario que un fallo o veredicto diga expresamente que se absuelve, para que se configure una absolución. De igual forma, ese Foro resolvió en Sanabria v. Unites States, supra, págs. 68-69, que _**por más manifiestamente errónea**_ que sea la decisión que emite un foro primario, no se puede revisar y encontrar culpable al acusado en apelación, porque se violaría la cláusula

constitucional discutida. Véanse, además, United States v. Martin Linen Supply Co., supra, pág. 571; Green v. United States, supra, pág. 188; United States v. Ball, supra, pág. 671.

Eso responde a que luego que recae un fallo o veredicto absolutorio, **un procedimiento posterior de determinación de hechos dirigido a declarar culpable o inocente** a una persona viola la cláusula constitucional que prohíbe la doble exposición. United States v. Martin Linen Supply Co., supra, pág. 570, reiterado en Smalis v. Pennsylvania, supra, pág. 146. Sin embargo, precisamente eso es lo que se hace en este caso.

Por último, es menester aclarar que el señor Ayala García no renunció al planteamiento de doble exposición por apelar la sentencia del foro primario que lo encontró culpable del Art. 3.1, supra. En esencia, ese fue el mismo planteamiento que hizo el Estado en Green v. United States, supra, págs. 193-194, y que el Tribunal Supremo federal rechazó expresamente.

IV

Al igual que el Tribunal de Apelaciones, opino que todos debemos esforzarnos por cumplir con la clara política pública en contra de la violencia doméstica que permea toda la Ley Núm. 54, supra. Véase, Art. 1.2 de la Ley Núm. 54, supra, 8 L.P.R.A. sec. 601. Sin embargo, aunque soy consciente que las acusaciones por violencia doméstica han aumentado en los últimos tiempos, no puedo por ello negarme a aplicar la Constitución que juré defender. El día que haga eso habré faltado a mi deber de defender y proteger nuestro régimen constitucional. Los individuos tienen unos derechos constitucionales y la obligación de este Tribunal es protegerlos.

Por los fundamentos antes expuestos, disiento respetuosamente de la decisión de este Tribunal de declarar culpable al señor Ayala García en primera instancia de un delito por el cual el Tribunal de Primera Instancia lo absolvió implícitamente. Por el contrario, confirmaría la decisión del Tribunal de Apelaciones que exoneró al señor Ayala García y ordenó su excarcelación.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado